1  MICHAEL J. AGUIRRE, City Attorney
2  ROBERT J. WALTERS, Deputy (CSBN 140741)
       Office of the City Attorney
3      1200 Third Avenue, Suite 1100
       San Diego, California 92101-4100
4      Telephone:  (619) 533-5800
       Facsimile:  (619) 533-5856
5
6  Attorneys for Defendants JERRY SANDERS and
   SCOTT PETERS
7

8                  **UNITED STATES DISTRICT COURT**

9                **SOUTHERN DISTRICT OF CALIFORNIA**

10  RODNEY M. WATKINS, on behalf of        ) Case No.  08cv-1615-W-BLM
    himself and                             )
11                                          )      San Diego Superior Court Case No.
                                            )      37-2008-00088865-CU-BT-CTL
12              Plaintiffs,                  )
                                            )
13        v.                                ) **NOTICE OF MOTION AND MOTION TO**
                                            ) **DISMISS PLAINTIFFS' CLASS ACTION**
14  JERRY SANDERS, in his capacity as       ) **COMPLAINT**
    Strong Mayor of the City of San Diego;  )
15  SCOTT PETERS, City of San Diego,        ) **[Fed. R. Civ. P. Rules 12(b)(1), (6)]**
    District 1 Council member; and DOES 1 to )
16  200, inclusive,                         )
                                            ) **Judge:**     Thomas J. Whelan
17              Defendants.                  ) **Dept.:**     Courtroom 7
                                            ) **Date:**      October 13, 2008
18                                          ) **Time:**      N/A
                                            )
19                                          )
                                            )      **NO ORAL ARGUMENT**
20                                          )      **per Civil Local Rule 7.1 (d.1)**
    _____)
21

22  **TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD**:

23         PLEASE TAKE NOTICE that on October 13, 2008, in Courtroom 13 of the above

24  entitled court located at 940 Front Street, San Diego, California, or as soon thereafter as the

25  matter may be heard, the Honorable Thomas J. Whelan presiding, Defendants JERRY SANDERS

26  AND SCOTT PETERS will move this Court pursuant to Federal Rules of Civil Procedure, Rule

27  12 (b)(1) and (6), to dismiss Plaintiff's Complaint for failure to state a cognizable claim for which

28  relief may be granted or are without legal merit, are not ripe, and are beyond the subject matter

                                            1

jurisdiction of this Court.  More specifically, the grounds for such motion are as follows:

1.    Plaintiff's complaint does not state facts sufficient to constitute a class action against the Defendants for failure to comply with procedural requirements for pleading form of complaint, and is otherwise defective with respect to applicable substantive elements.

2.    Plaintiff's Complaint does not state facts sufficient to constitute a class action against the Defendants because Plaintiff lacks standing or otherwise demonstrates that his status as class representative of a putative class action is in adequate as he cannot both be a class representative and class counsel.

3.    Plaintiff's Complaint is jurisdictionally defective and it does not state facts sufficient to constitute a cause action against the Defendants because Plaintiff has not complied with pre-filing requirements of the Government Claims Act (Gov. Code §§ 810-996.6) as to state law claims.

4.    Plaintiff's Complaint is jurisdictionally defective and does not state facts sufficient to constitute a cause of action against the Defendants because the same is not ripe.

5.    Defendants are immune from any federal claim asserted by Plaintiff.

This motion will be based on this notice and motion, the City Defendants' memorandum of points and authorities in support thereof, as well as the request for judicial notice and attached exhibits, the declaration of Robert Walters, and such other matters of which the Court may take judicial notice, the pleadings, records, and files herein, and any evidence or argument presented at the hearing on this motion.

Respectfully submitted,

Dated: September 8, 2008              MICHAEL J. AGUIRRE, City Attorney

By:    s/ Robert J. Walters
       Robert J. Walters
       Deputy City Attorney
       Email: Rwalters@sandiego.gov

Attorneys for Defendants JERRY SANDERS and SCOTT PETERS

2

1  MICHAEL J. AGUIRRE, City Attorney
   ROBERT J. WALTERS, Deputy (CSBN 140741)
2       Office of the City Attorney
3       1200 Third Avenue, Suite 1100
        San Diego, California 92101-4100
4       Telephone:  (619) 533-5800
        Facsimile:  (619) 533-5856
5
   Attorneys for Defendants JERRY SANDERS and
6  SCOTT PETERS

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10  RODNEY M. WATKINS, on behalf of      ) Case No.  08cv-1615-W-BLM
    himself and                          )
11                                       )     San Diego Superior Court Case No.
                                         )     37-2008-00088865-CU-BT-CTL
12           Plaintiffs,                 )
                                         )
13       v.                              ) DEFENDANT'S MEMORANDUM OF
                                         ) POINTS AND AUTHORITIES IN SUPPORT
14  JERRY SANDERS, in his capacity as    ) OF MOTION TO DISMISS PLAINTIFF'S
    Strong Mayor of the City of San Diego; ) CLASS ACTION COMPLAINT
15  SCOTT PETERS, City of San Diego,     )
    District 1 Council member; and DOES 1 to ) [Fed. R. Civ. P. Rules 12(b)(1), (6)]
16  200, inclusive,                      )
                                         ) **Judge:**     Thomas J. Whelan
17           Defendants.                 ) **Dept.:**     Courtroom 7
                                         ) **Date:**      October 13, 2008
18                                       ) **Time:**      N/A
                                         )
19                                       )
                                         )        **NO ORAL ARGUMENT**
20                                       )     **per Civil Local Rule 7.1 (d.1)**
                                         )
21  _____ )

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

                                0

1

## TABLE OF CONTENTS

2

3

                                                                          Page

4       Table of Authorities                                                ii

5    I.     INTRODUCTION                                                     1

6    II.    FACTUAL AND PROCEDURAL BACKGROUND                               1

7    III.   ARGUMENTS                                                       3

8           A.    Standards Applicable To Motions To Dismiss Pursuant to FRCP   3
                  Rule 12(b)(1), (6)
9
            B.    Plaintiff's Claim Regarding the Kayak RFP Process is not Ripe   5
10
            C.    Plaintiff's Alleged Claim with the City is Fatally Defective   7
11
            D.    Plaintiff's Action Should be Dismissed Because He Does Not Meet   10
12                Requirements or Comply With Court Rules Applicable to Class
                  Actions Under Either State or Federal Law
13
            E.    Plaintiff Lacks Standing Or Otherwise Is Incompetent to Represent   13
14                the Class

15          F.    Defendants Are Immune from Federal Claims Asserted By Plaintiff   15

16   V.     CONCLUSION                                                      17

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MEMO OF POINTS & AUTHORITIES          Case No. 08cv-1615-W-BLM
RE MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

<u>CASES (FEDERAL)</u>                                                                                        <u>Page</u>

3

*Abbott Labs. v. Gardner*,                                                                                         5
     387 U.S. 136 (1967)

4

5

*Anchorage v. United States*,                                                                                  5, 6
     980 F.2d 1320 9th Cir.1992)

6

*Association of American Med. Colleges v. United States*,                                    3
     217 F.3d 770 (9th Cir. 2000)

7

8

*Armstrong v. Davis*,                                                                                             13
     275 F.3d 849 (9th Cir.2001)

9

*Bates v. United Parcel Service, Inc.*,                                                                 13
     511 F.3d 974 (9th Cir. 2007)

10

11

*Balistreri v. Pacifica Police Dept.*,                                                                    4
     901 F.2d. 696 (9th Cir.1990).

12

*Bell Atlantic Corp. v. Twombly*,                                                                        4
     __ U.S. __, 127 S.Ct. 1955 (2007)

13

14

*Branch v. Tunnell*,                                                                                             5
     14 F.3d 449 (9th Cir. 1994)

15

*C.E. Pope Equity Trust v. U.S.*,                                                                       14
     818 F.2d 696 (9th Cir. 1987)

16

17

*Canyon County v. Syngenta Seeds, Inc.*,                                                    14, 15, 16
     519 F.3d 969 (9th Cir. 2008)

18

*Cetacean Cmty. v. Bush*,                                                                               14
     386 F.3d 1169 (9th Cir.2004)

19

20

*Cevallos v. City of Los Angeles*,                                                                   15
     914 F.Supp. 379 (CD CA 1996)

21

*City of St. Louis v. Praprotnik*,                                                                       2
     485 U.S. 112 (1988)

22

23

*Clark v. Time Warner Cable*,                                                                          15
     523 F.3d 1110 (9th Cir. 2008)

24

*Clegg v. Cult Awareness Network*,                                                                 4
     752 (9th Cir. 1994)

25

26

ii

**CASES (FEDERAL)**                                                              Page

*Corrie v. Caterpillar, Inc.,*                                                     5
        503 F.3d 974 (9th Cir. 2007)

*Diaz v. Gates,*                                                                  16
        420 F.3d 897 (9th Cir.2005)

*Eagle Financial Service v. C.I.P. Venture Group, LLC,*                           14
        2007 WL 1430060 (S.D. Cal. 2007)

*Fecht v. The Price Co.,*                                                          5
        70 F.3d 1078 (9th Cir. 1995)

*Franklin v. Massachusetts,*                                                       6
        505 U.S. 788 (1992)

*Frederiksen v. Poloway,*                                                          4
        637 F.2d 1147 (7th Cir. 1978)

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. Inc.,*                       13
        528 U.S. 167 (2000)

*Gillette v. Delmore,*                                                             2
        979 F.2d 1342 (9th Cir. 1992)

*Gilligan v. Jamco Development Corp.,*                                             4
        108 F. 3d 246 (9th Cir. 1997).

*In re Stac Electronics Sec Litig.,*                                              5
        89 F.3d 1399 (9th Cir. 1996)

Interstate Nat. Gas Co. V. S. Cal. Gas. Co.,                                      5
        209 F. 2d 380 (9th Cir. 1953)

*Jett v. Dallas Independent School District,*                                     2
        491 U.S. 791 (1989)

*LaDuke v. Nelson,*                                                               14
        762 F.2d 1318 (9th Cir.1985)

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,*                   16
        440 U.S. 391 (1979)

*Lujan v. Defenders of Wildlife,*                                               3, 6
        504 U.S. 555 (1992)

*Lynch v. Dawson,*                                                               14
        820 F.2d 1014 (9th Cir. 1987)

iii

| | |
|---|---|
| **CASES (FEDERAL)** | **Page** |
| *MGIC Indem Corp. v. Weisman,*<br>  80 F.2d 500 (9th Cir. 1986) | 5 |
| *Mt. Adams Veneer Co. v. United States,*<br>  896 F.2d 339 (9th Cir. 1989) | 6 |
| *McShane v. United States,*<br>  366 F.2d 286 (9th Cir.1966) | 14 |
| *Matassarin v. Lynch,*<br>  174 F3d 549 (5th Cir. 1999) | 14 |
| *Nat'l Rifle Ass'n v. Magaw,*<br>  132 F.3d 272 (6th Cir. 1997) | 6 |
| *Oscar v. Univ. Students Coop. Ass'n,*<br>  965 F.2d 783 (9th Cir.1992) | 16 |
| *Pembaur v. City of Cincinnati,*<br>  475 U.S. 469 (1986) | 2 |
| *Roberts v. Corrothers,*<br>  812 F2d 1173 (9th Cir. 1987) | |
| *Russell v. United States,*<br>  308 F.2d 78 (9th Cir.1962); | 14 |
| *Sacks v. Office of Foreign Assets Control,*<br>  466 F3d 764 (9th Cir. 2006). | 5 |
| *Schmier v. U.S. Court of Appeals for Ninth Circuit,*<br>  279 F.3d 817 (9th Cir. 2002) | 6 |
| *Steel Co. v. Citizens for a Better Environment,*<br>  523 US 83 (1998) | 4 |
| *Susman v. Lincoln American Corp.,*<br>  561 F2d 86 (7th Cir. 1977) | 14 |
| *Tenney v. Brandhove,*<br>  341 U.S. 367 (1951) | 16 |
| *Trevino v. Gates,*<br>  23 F.3d 1480 (9th Cir. 1994), | 16 |
| *Turner v. Cook,*<br>  362 F.3d 1219 (9th Cir.2004) | 15 |

iv

| | |
|---|---|
| **CASES (FEDERAL)** | **Page** |
| *United States v. Tulare Lake Canal Co.,*<br>    535 F.2d 1093 (9th Cir. 1976) | 4 |
| *Warren v. Fox Family Worldwide, Inc.,*<br>    328 F3d 1136 (9th Cir. 2003) | 3 |
| *Weisbuch v. County of Los Angeles,*<br>    119 F3d 778 (9th Cir. 1997) | 5 |
| **CASES (STATE)** | **Page** |
| *Apple Computer, Inc. v. Superior Court*<br>    (2005) 126 Cal.App.4th 1253 | 15 |
| *Bartlett v. Hawaiian Village, Inc.*<br>    (1978) 87 Cal.App.3d 435 | 12 |
| *Best Buy Stores, L.P. v. Superior Court*<br>    (2006) 137 Cal.App.4th 772 | 14 |
| *Brown v. Regents of University of California*<br>    (1984) 151 Cal.App.3d 982 | 10 |
| *CLD Const., Inc. v. City of San Ramon*<br>    (2004) 120 Cal.App.4th 1141 | 15 |
| *California Water & Telephone Co. v. County of Los Angeles*<br>    (1967) 253 Cal.App.2d 16 | 7 |
| *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*<br>    (1997) 52 Cal.App.4th 1 | 13 |
| *Carabini v. Superior Court*<br>    (1994) 26 Cal.App.4th 239 | 11 |
| *City of San Jose v. Superior Court*<br>    (1974) 12 Cal.3d 447 | 8, 10 |
| *City of Stockton v. Superior Court*<br>    (2007) 42 Cal.4th 730 | 8 |
| *Clausing v. San Francisco Unified School Dist.*<br>    (1990) 221 Cal.App.3d 1224 | 11 |
| *County of Fresno v. Shelton*<br>    (1998) 66 Cal.App.4th 996 | 13 |

v

**CASES (STATE)**                                                          **Page**

*Eaton v. Ventura Port Dist.*                                                8
        (1975) 45 Cal.App.3d 862

*Gamet v. Blanchard*                                                        15
        (2001) 91 CA4th 1276

*Hart v. Alameda County*                                                    10
        (1999) 76 Cal.App.4th 766

*Howard Jarvis Taxpayers Assn. v. City of La Habra*                          9
        (2001) 25 Cal.4th 809

*In re BCBG Overtime Cases*                                                 11
        (2008) 163 Cal.App.4th 1293

*Jefferson v. County of Kerns*                                              9
        (2002) 98 Cal.App.4th 606

*J.W. v. Superior Court*                                                    14
        (1993) 17 Cal.App.4th 958

*Los Altos El Granada Investors v. City of Capitola*                        6
        (2006) 139 Cal.App.4th 629

*Lyles v. State*                                                            9
        (2007) 153 Cal.App.4th 281

*Massa v. So. Cal. Rapid Transit Dist.*                                     8
        (1996) 43 Cal.App.4th 1217

*Merco Constr. Engineers, Inc. v. Municipal Court*                          15
        (1978) 21 Cal.3d 724

*Norgart v. Upjohn Co.*                                                     9
        (1999) 21 Cal.4th 383

*Ovando v. County of Los Angeles*                                           9
        (2008) 159 Cal.App.4th 42

*Pacific Legal Foundation v. California Coastal Com.*                        6
        (1982) 33 Cal.3d 158

*Pinnacle Holdings, Inc. v. Simon*                                          12
        (1995) 31 Cal.App.4th 1430

*Richmond v. Dart Industries, Inc.*                                         11
        (1981) 29 Cal.3d 462

vi

**CASES (STATE)**                                                        Page

*Rose v. Medtronics, Inc.*                                                11
    (1980) 107 Cal.App.3d 150

*Silva v. Block*                                                         12
    (1996) 49 Cal.App.4th 345

*State of California v. Superior Court*                                   8
    (2004) 32 Cal.4th 1234

*TrafficSchoolOnline, Inc. v. Clarke*                                     7
    (2003) 112 Cal.App.4th 736

*Vasquez v. Superior Court*                                              11
    (1971) 4 Cal.3d 800

*Wood v. Riverside General Hosp.* (1994) 25 Cal.App.4th 1113             8

**STATUTES (FEDERAL)**                                                   Page

U.S. Const., art. III, §2                                                3

18 U.S.C. §§ 1961                                                       15

18 U.S.C. §§ 1962                                                       15

42 U.S.C. §1983                                                          2

Federal Rules of Civil Procedure Rule 12                               3, 4, 5

Federal Rules of Civil Procedure Rule 23                               10, 11

Federal Rules of Evidence Rule 201                                       5


**STATUTES (STATE)**                                                    Page

Code of Civil Procedure §382                                            10

Government Code §905                                                     7

Government Code §910                                                     8

Government Code §911.2                                                   9

Government Code §945.4                                                  7, 8

DEFENDANTS' MEMO OF POINTS & AUTHORITIES                   Case No. 08cv-1615-W-BLM
RE MOTION TO DISMISS

| | **OTHER AUTHORITIES** | **Page** |
|---|---|---|
| 1 | | |
| 2 | USDC -- SD CA Local Rule 23.1 | 11, 12 |
| 3 | California Rules of Court Rule 3.761 | 12 |

DEFENDANTS' MEMO OF POINTS & AUTHORITIES    Case No.  08cv-1615-W-BLM
RE MOTION TO DISMISS

I.

**INTRODUCTION**

Defendants JERRY SANDERS ("Sanders") and SCOTT PETERS ("Peters"), Mayor and City Councilmember of the City of San Diego,[1] hereby submit their points and authorities in support of their motion pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP"), to the complaint of Plaintiff RODNEY M. WATKINS, in *pro per*. Plaintiff's complaint is asserted as a putative class action, in which he appears to be both class representative and class counsel, in which he challenges certain fees and a prospective competitive bid program seeking injunctive and declaratory relief, as well as damages and attorney's fees. For the reasons that follow, this Court should dismiss Plaintiff's complaint.

II.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that he is a resident of the City of San Diego and the owner of a small business engaged in education and recreational scuba and kayak tours in the La Jolla Cove and La Jolla Shores area of the City of San Diego. Complaint, ¶1. He further alleges that his personal claim and cause of action is typical and representative of the class he represents. Complaint, ¶1. He also alleges that he and each member of the class has standing. Complaint, ¶1. Such putative class members obviously consist of him and other kayak related businesses. Complaint, ¶1. Although unclear, Plaintiff appears to include in the class other businesses such as surf camps [Complaint, ¶¶16, 23], kayak fishermen and "all other persons or businesses which use or requires access to navigable waters" [Complaint, ¶23], as well as private boats [Complaint, ¶13].

Plaintiff alleges that the City has initiated a request for proposal ("RFP") process that has been applied to certain beachfront businesses, including so-called "surf camps," a form of which has or will be implemented upon kayak businesses. Complaint, ¶¶3, 15, 16, 26. Plaintiff alleges

---

[1]    Although the City of San Diego ("the City"), a municipal corporation, is not expressly named as a party as such, out of an abundance of caution, assuming that Plaintiff has intended to do so, this demurrer applies to any claims Plaintiff also may be asserting against the City for the acts of Sanders, Peters, as well as any of the City employee Doe defendants that are generally alleged to have participated in the acts forming the basis of Plaintiff's complaint.

1

1  that the RFP process was part of an entrepreneurial or public/private partnership program ("EP")

2  that was developed by resolution adopted by the City in 1993 and specifically, "Resolution No.

3  94-768." Complaint, ¶15. Plaintiff contends that the RFP process violates numerous statutory

4  and constitutional provisions, as well as states a cause of action for violation of federal laws.

5  Complaint, ¶¶ 7, 20, 21, 23, 25. In addition, Plaintiff appears to allege that the City has through

6  a regulatory permit requirement, exacted fees that Plaintiff contends is an illegal tax or other

7  improper charge for the use of navigable waters along the coastline north of La Jolla, as well as

8  criminal enforcement. Complaint, ¶¶ 20, 22, 25, 27, 31, 32.

9      Plaintiff also alleges that Defendants have engaged in "Discriminatory Pricing"

10  [Complaint, pp. 15-16, ¶¶ 19-20[2]]. However, Plaintiff has not alleged any action on the part of

11  the City or any of the Defendants. In addition, the only federal law referenced is 49 U.S.C.

12  §31114, part of the federal legislative scheme to regulate transportation safety and pursuant to 49

13  U.S.C. §31114, the purpose of the corresponding subchapter is to ensure that the Secretary of

14  Transportation, the various States, and other political jurisdictions work in partnership to

15  establish programs to improve motor carrier, commercial motor vehicle, and driver safety to

16  support a safe and efficient transportation system. This ostensibly does not appear to have

17  application to the factual allegations of restricted parking by a neighborhood association – not an

18  entity of the City – that impacts some of the kayak-related businesses. Elsewhere, Plaintiff has

19  merely referenced 42 U.S.C. §1983[3] and "18 USC 1961 et seq." Complaint, ¶7.

---

20

21      [2]   Plaintiff's complaint goes from paragraphs 1-34 on pages 1 through 12. However, the numbering begins again with paragraph 14 (which also is repeated) following paragraph 34. Paragraphs 19-20 referenced here are part of the misnumbered group beginning on page 12 of Plaintiff's complaint.

22

23      [3]   Additionally, under 42 U.S.C §1983, a plaintiff can sustain a claim against a municipality in the following three ways. First, he "may prove that a city employee committed a constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992); *Jett v. Dallas Independent School District*, 491 U.S. 791, 737 (1989). Second, he may demonstrate that the constitutional offender was an official who possessed "final policy-making authority" and that the action of which he complained thus qualified as an official government policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Gillette, supra*, 979 F.2d at 1346. Third, he may show than an official with final policy-making authority endorsed the unconstitutional conduct of the employee and the basis for the actions taken. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988); *Gillette, supra*, 979 F.2d at 1346-47. There are no such allegations that have been asserted by Plaintiff.

24

25

26

27

28

2

1    Plaintiff further alleges that he has "duly filed a written formal claim against the city

2    seeking the return of his illegally collected permit fees; and such claim was formally rejected in

3    writing on May 22, 2008." Complaint, ¶8. *But see*, Claim Against the City of San Diego of

4    Scuba San Diego, Inc. dated April 3, 2008, Request for Judicial Notice in Support of Motion to

5    Dismiss of Defendants Jerry Sanders and Scott Peters to Plaintiffs' Class Action Complaint

6    ("RFJN"), **Exhibit B**.[4]

7    Plaintiff subsequently filed the instant litigation on August 1, 2008, which as noted above

8    includes some references to a class action, although not a model of pleading. Plaintiff

9    specifically seeks declaratory relief and injunctive relief, restitution or disgorgement, and other

10    damages, including class damages and attorney's fees.

11                                  **III.**

12                          **LEGAL ARGUMENTS**

13    A.    Standards Applicable To Motions To Dismiss Pursuant to FRCP Rule 12(b)(1), (6)

14    A party is entitled pursuant to FRCP Rule 12(b)(1) to move to dismiss an action for lack

15    of subject matter jurisdiction on the basis that the complaint fails to allege grounds for federal

16    subject matter jurisdiction as required by FRCP Rule 8(a) The lack of federal jurisdiction must

17    appear from the "face of the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F3d 1136,

18    1139 (9th Cir. 2003). Article III of the U.S. Constitution further limits the jurisdiction of federal

19    courts to actual cases or controversies. U.S. Const., art. III, §2. Moreover, as a threshold issue,

20    the Court must first consider whether Plaintiff's claims are ripe for judicial consideration. *Lujan*

21    *v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A claim that is not yet "ripe" is not

22    justiciable and thus may be dismissed without prejudice under FRCP Rule 12(b)(1) for lack of

23    federal question jurisdiction. *Association of American Med. Colleges v. United States*, 217 F.3d

24    770, 784, n.9 (9th Cir. 2000).

25

26

27    _____

       [4]    As will be detailed below (and although not attached to Plaintiff's complaint), Scuba San
       Diego, Inc. – not Plaintiff individually – submitted a claim to the City seeking to recover overpayments
28    for its "excessive fees for Kayak Launch permits in excess of impacts to the city." RFJN, **Exhibit B**.
       Such claim is defective in procedural and substantive respects.

                                  3

1    On the other hand, a Rule 12(b)(6) motion, tests the legal sufficiency of the claims

2  asserted in a complaint filed in federal court. A Rule 12(b)(6) dismissal is proper where there is

3  either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

4  cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d. 696, 699 (9th Cir.1990).

5  The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim is not whether the

6  claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support

7  the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997).

8  When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the

9  complaint as true and construe them in the light most favorable to the non-moving party. *Barron*

10  *v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994).

11    The court is not required, however, to accept "conclusory legal allegations cast in the

12  form of factual allegations if those conclusions cannot reasonably be drawn from the facts

13  alleged." *Clegg v. Cult Awareness Network*, 752, 754-55 (9th Cir. 1994.)  While a complaint

14  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, in order

15  to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must

16  contain more than a "formulaic recitation of the elements of a cause of action;" it must contain

17  factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic*

18  *Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain

19  something more ... than ... a statement of facts that merely creates a suspicion [of] a legally

20  cognizable right of action." *Id.*  Unsupported conclusions of law and sweeping deductions of fact

21  are not to be taken as true. *Frederiksen v. Poloway*, 637 F.2d 1147, 1150, n.1 (7th Cir. 1978);

22  *United States v. Tulare Lake Canal Co.*, 535 F.2d 1093, 1096 (9th Cir. 1976).

23    Dismissal of a claim is always proper where the federal claim is "immaterial and made

24  solely for the purpose of obtaining federal jurisdiction" or where the "claim is wholly

25  insubstantial and frivolous." *Steel Co. v. Citizens for a Better Environment*, 523 US 83, 89

26  (1998); *Roberts v. Corrothers*, 812 F2d 1173, 1177(9th Cir. 1987).  In addition, when a plaintiff

27  fails to introduce a pertinent document as part of his pleading, the defendant may introduce the

28  exhibit as part of his motion attacking the pleadings.  Documents whose contents are alleged in a

4

1    complaint and whose authenticity no party questions, but which are not physically attached to the

2    pleadings, may be considered in ruling on a Rule 12(b) motion to dismiss. *Branch v. Tunnell*, 14

3    F.3d 449,453-454 (9th Cir. 1994). Further, when the Court's jurisdiction is at issue, the court

4    may consider extrinsic evidence when ruling on a motion to dismiss. *Corrie v. Caterpillar, Inc.*,

5    503 F.3d974, 982 (9th Cir. 2007).

6         Thus, when ruling on the Defendants' motion to dismiss the Court may consider the full

7    texts of documents the complaint references only in part. *Fecht v. The Price Co.*, 70 F.3d 1078,

8    1080 n.1., (9th Cir. 1995); *cert. denied*, 517 U.S. 1136 (1996); *In re Stac Electronics Sec Litig.*,

9    89 F.3d 1399, 1405 n.4 (9th Cir. 1996). The Court may also take judicial notice of public

10   records outside the pleadings and may take judicial notice of records and reports of

11   administrative bodies. FRE 201(b); *MGIC Indem Corp. v. Weisman*, 80 F.2d 500, 504 (9th Cir.

12   1986); *Interstate Nat. Gas Co. V. S. Cal. Gas. Co.*, 209 F. 2d 380, 385 (9th Cir. 1953).

13        Furthermore, a Rule 12(b)(6) motion to dismiss for failure to state a claim can be used

14   when plaintiff has included allegations in the complaint that, on their face, disclose some

15   absolute defense or bar to recovery. *Weisbuch v. County of Los Angeles*, 119 F3d 778, 783, n.1

16   (9th Cir. 1997). A motion to dismiss for failure to state a claim under Rule 12(b)(6) also lies

17   where the complaint reveals on its face that plaintiff lacks standing. *Sacks v. Office of Foreign*

18   *Assets Control*, 466 F3d 764, 771 (9th Cir. 2006).

19   **B.    Plaintiff's Claim Regarding the Kayak RFP Process is not Ripe**

20        Under both federal and state law, Plaintiff's claim regarding the proposed kayak RFP

21   process is not ripe. When evaluating whether a claim is "ripe" the Court must consider (1)

22   whether the issues are yet fit for judicial decision and (2) the hardship to the parties of

23   withholding court consideration. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abr. on*

24   *other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). *Also see*, *Nat'l Rifle Ass'n v. Magaw*,

25   132 F.3d 272, 284 (6th Cir. 1997); *Anchorage v. United States*, 980 F.2d 1320, 1323 (9th

26   Cir.1992) (review of a government agency's action is only ripe for review if the issues presented

27   are purely legal and final agency action has been achieved).

28   ///

DEFENDANTS' MEMO OF POINTS & AUTHORITIES                    Case No.  08cv-1615-W-BLM
RE MOTION TO DISMISS

1    The core question is whether the agency has ***completed its decision-making process***, and

2 whether the result of that process will affirmatively affect the parties, rather than prospectively

3 or possibly affect them in the future. *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). The

4 Court must consider: (1) whether the administrative action is a definitive statement of an

5 agency's position; (2) whether the action has a direct and immediate effect on the complaining

6 parties; (3) whether the action has the status of law; and (4) whether the action requires

7 immediate compliance with its terms. *See, Mt. Adams Veneer Co. v. United States*, 896 F.2d

8 339, 343 (9th Cir. 1989). *Also see, Anchorage, supra*, 980 F.2d at 1323.

9    In this case, therefore, before Plaintiff's claims can be said to be "ripe" or justiciable, the

10 City must first be given the opportunity to "arrive[ ] at a final, definitive position regarding how

11 it will apply the regulations at issue to the particular land in question." *Williamson County v.*

12 *Hamilton Bank*, 473 U.S. 172, 191 (1985). In addition, the class action plaintiff must have

13 sustained a "concrete" injury, "distinct and palpable ... as opposed to merely abstract." *Schmier*

14 *v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002); *Lujan*, 504 U.S. at

15 560 (also discussing the standing requirement for a concrete and particularized injury). Such

16 injury must have actually occurred or must occur imminently; hypothetical, speculative or other

17 "possible future" injuries do not count in the standings calculus. *Id.* Neither has yet occurred.

18    Under California law, for purposes of the "ripeness" doctrine, a court may deny review

19 where the issues raised by a general challenge to an administrative rule or policy are not

20 "sufficiently concrete to allow judicial resolution even in the absence of a precise factual

21 context." *Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 649.

22 The court must evaluate both the fitness of the issues for judicial decision and the hardship to the

23 parties of withholding court consideration. *Id.* Before a controversy is ripe for adjudication it

24 must be definite and concrete, touching the legal relations of parties having adverse legal

25 interests. *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171. It

26 must be a real and substantial controversy admitting of specific relief through a decree of a

27 conclusive character, as distinguished from an opinion advising what the law would be upon a

28 hypothetical state of facts." *Id.* It is long established that a controversy is ripe when it has

6

1  reached, but has not passed, the point that the facts have sufficiently congealed to permit an

2  intelligent and useful decision to be made. *California Water & Telephone Co. v. County of Los*

3  *Angeles* (1967) 253 Cal.App.2d 16, 22.

4        As of the filing of Plaintiff's complaint, the City had previously adopted an RFP program

5  with respect to surf camps, which has been in existence since 2004. No such program has yet

6  been adopted with respect to kayak related enterprises. See, RFJN, **Exhibit F** (copies of

7  resolutions renewing contracts with various surf camps per the applicable RFP). Indeed,

8  Plaintiff's complaint recognizes that the City is "planning to institute a public/private partnership

9  permit process for kayak operators and a proposed RFP, such already exists for the surf camps, is

10  being circulated for kayak tour operators, scuba instruction, and guided scuba excursions."

11  Complaint, ¶26. Thus, Plaintiff's complaint is not ripe as to the proposed RFP process to kayak

12  related businesses, and the Court should dismiss under FRCP Rule 12(b)(1) on this ground.

13  C.    **Plaintiff's Alleged Claim with the City is Fatally Defective**

14        Plaintiff has alleged that he has duly complied with Government Claims Act ("Claims

15  Act" or "Act") requirements. Complaint, ¶8. However, Plaintiff's alleged "duly filed" claim is

16  invalid in two respects. First, the Court may take judicial notice that Plaintiff himself did not

17  personally submit a claim to the City. Rather, Scuba San Diego, Inc., a corporation in which

18  Plaintiff is president, submitted the claim. *See*, RFJN, **Exhibit D** (printout from California

19  Secretary of State website related to Scuba San Diego as an active registered corporation). As

20  such, Plaintiff did not comply with the Claims Act and his complaint should be dismissed.

21  Second, Plaintiff's claim in fact was untimely and thus his state causes of action are precluded.

22        Under the Claims Act, no suit for "money or damages" may be brought against a public

23  entity until a written claim has been presented to the public entity and the claim either has been

24  acted upon or is deemed to have been rejected. Gov. Code, §§ 905, 945.4. The purpose of the

25  claims statutes is to: (1) provide a public entity with sufficient information to allow it to

26  thoroughly investigation the matter; (2) facilitate settlement of meritorious claims; (3) enable a

27  public entity to engage in fiscal planning; and (4) to allow a public entity to avoid similar

28  liability in the future. *TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742.

7

1  Claim presentation is a condition precedent to every cause of action against a public entity "for

2  money or damages." *State of Calif. v. Superior Court* (2004) 32 Cal.4th 1234, 1239-1240; Gov.

3  Code, § 945.4.

4      Moreover, failure to timely present a claim for money or damages to a public entity bars

5  a plaintiff from filing a lawsuit against that entity. *City of Stockton v. Superior Court* (2007) 42

6  Cal.4th 730. This applies both to suits against the public entity and to suits against the public

7  employees whose acts are the subject of the claim involved. *Massa v. So. Cal. Rapid Transit*

8  *Dist.* (1996) 43 Cal.App.4th 1217, 1222. The timely filing of a claim under the Act also is an

9  essential element of a claim for relief against the City and its employees under California law.

10  *Wood v. Riverside General Hosp.* (1994) 25 Cal.App.4th 1113.

11      Pursuant to Government Code §910, a claim shall be presented by the claimant or by a

12  person acting on his or her behalf and shall show all of the following:

13          (a) [t]he name and post office address of the claimant. [¶] (b) [t]he post
            office address to which the person presenting the claim desires notices to
14          be sent. [¶] (c) [t]he date, place and other circumstances of the occurrence
            or transaction which gave rise to the claim asserted. [¶] (d) [a] general
15          description of the indebtedness, obligation, injury, damage or loss incurred
            so far as it may be known at the time of presentation of the claim. [¶] (e)
16          [t]he name or names of the public employee or employees causing the
            injury, damage, or loss, if known."
17

18  The California Supreme Court also has held that the term "claimant" as used in Government

19  Code §910 equates with a "class" and thus a claim may be filed on behalf of a class. *City of San*

20  *Jose v. Superior Court* (1974) 12 Cal.3d 447, 457.

21      Parenthetically, for potential class actions, to satisfy the claims statutes, the class claim

22  must provide the name, address, and other specified information concerning the representative

23  plaintiff and sufficient information to identify and make the class itself ascertainable. *Eaton v.*

24  *Ventura Port Dist.* (1975) 45 Cal.App.3d 862, 867. Any responsible governmental entity would

25  be chary about approving a claim which might result in substantial unforeseeable liability. *Id.* at

26  868. At a minimum, in order for a class claim to be considered to substantially comply with

27  Government Code §910, it must contain sufficient information to enable the governmental entity,

28  either from its own records or from the claim itself, to reasonably determine the circumstances

8

1   which it is claimed give rise to liability and the possible outer limits of that liability. *Id.* The

2   burden is on the Plaintiff to show that he was entitled to maintain a class action and the

3   determination of such entitlement was within the discretion of the trial court upon application of

4   the correct criteria. *Id.*

5        Plaintiff only vaguely alleges compliance with the Claims Act. Complaint, ¶8.

6   Unfortunately, he did not attach the claim he submitted to the City. Defendants submit that this

7   Court may take judicial notice of the actual claim, which reveals that Scuba San Diego, Inc., a

8   California corporation, not Rodney Watkins in his individual capacity, filed the claim in April

9   2008. RFJN, **Exhibit B**. It is axiomatic that a corporation is a separate legal entity from its

10  officers and shareholders or owners. Plaintiff's failure to at least submit the same claim in his

11  personal capacity thus prevents him from bringing this action.

12       In addition, had the claim been attached to Plaintiff's complaint, the Court would also be

13  able to determine that Scuba San Diego, Inc., rather than Plaintiff was claiming that it was

14  paying an illegal tax disguised as a regulatory permit fee since October 2000. RFJN, **Exhibit B**.

15  Under the Claims Act, a person who wishes to sue a public entity for damages must first present

16  a claim to the entity within six months of the date the cause of action accrued. Gov. Code §§

17  911.2, 945.4. For purposes of computing the time limit for under the Act, the date of accrual is

18  the same as for the statute of limitations that would otherwise be applicable. *Jefferson v. County*

19  *of Kerns* (2002) 98 Cal.App.4th 606, 610. Generally, a cause of action accrues when the plaintiff

20  has suffered damages from a wrongful act. *Lyles v. State* (2007) 153 Cal.App.4th 281, 286

21  (*citing, Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397). *Also see, Ovando v. County of Los*

22  *Angeles* (2008) 159 Cal.App.4th 42, 66 (*citing, Howard Jarvis Taxpayers Assn. v. City of La*

23  *Habra* (2001) 25 Cal.4th 809, 815 (cause of action ordinarily accrues when the wrongful act

24  occurs, the liability arises, and the plaintiff is entitled to prosecute an action). In other words, a

25  cause of action accrues upon the occurrence of the last element essential to the cause of action.

26  *Howard Jarvis, supra*, 25 Cal.4th at 815.

27       Scuba San Diego, Inc.'s claim would have arisen in October 2000 and it would have been

28  required to bring an action against the City before the expiration of the immediate six month.

9

1  The claim submitted to the City also indicates that the time period is from 2000 to November

2  2007. RFJN, **Exhibit B**. The City, on April 15, 2008, also initially rejected Scuba San Diego,

3  Inc.'s claim since it was untimely. RFJN, **Exhibit E**. Since Plaintiff filed this action, and

4  assuming *arguendo* he could do so on behalf of Scuba San Diego, Inc., the complaint was filed

5  outside the six month time period required by the Claims Act. Even if Plaintiff's claim related to

6  the point in time that his fees went from $500 per year to $500 per month, this occurred per his

7  claim in March 2007. RFJN, **Exhibit B**. Thus, alternatively, Plaintiff's failure to file a claim on

8  or before September 2007 bars this action, at least to the state law claims.

9  Accordingly, the Court should dismiss under FRCP Rule 12(b)(6) on the ground that

10  Plaintiff did not comply with the Claims Act requirements in order to prosecute this action since

11  this is a jurisdictional requirement or prerequisite to filing a civil action against a public entity.

12  **D.    Plaintiff's Action Should be Dismissed Because He Does Not Meet Requirements or**

13  **Comply With Court Rules Applicable to Class Actions Under Either State or Federal Law**

14  Under both California and federal law, it is well settled that either party may initiate the

15  class action and certification process. FRCP 23. Under state law, California Code of Civil

16  Procedure section ("CCP §") 382 similarly authorizes class actions when the question is one of a

17  common or general interest, of many persons, or when the parties are numerous, and it is

18  impracticable to bring them all before the court. A class action cannot be maintained where each

19  member's right to recover depends on facts peculiar to his or her case. *Brown v. Regents of*

20  *University of California* (1984) 151 Cal.App.3d 982, 988-989; *City of San Jose v. Superior Court*

21  (1974) 12 Cal.3d 447, 459. Under California's class action statute, when a class action is

22  brought against multiple defendants, the action may only be maintained against defendants as to

23  whom the class representative has a cause of action. *Hart v. Alameda County* (1999) 76

24  Cal.App.4th 766, 775. Without such a personal cause of action, the prerequisite that the claims

25  of the representative party be typical of the class cannot be met. *Id.*

26  All class actions in federal court must meet the prerequisites of FRCP Rule 23(a). There

27  are four prerequisites: First, the class must be so numerous that joinder of all members

28  individually is "impracticable." FRCP 23(a)(1). Second, there must be questions of law or fact

10

1  common to the class. FRCP 23(a)(2). Third, the claims of the class representative must be

2  typical of the claims or defenses of the class. FRCP 23(a)(3). Fourth, the person representing

3  the class must be able fairly and adequately to protect the interests of all members of the class

4  (FRCP 23(a)(4). In addition, the complaint should contain facts showing one or more grounds

5  for certification of a class action: (1) risk of prejudice from separate actions; (2) injunctive relief

6  sought for class; or (3) "predominant" common questions and "superior" remedy. FRCP 23(b).

7       Under California law, two requirements must be met to sustain a class action. The first is

8  existence of an ascertainable class, and the second is a well-defined community of interest in the

9  questions of law and fact involved. *See, e.g., Vasquez v. Superior Court* (1971) 4 Cal.3d 800,

10  809. The second requirement-a community of interest-embodies three factors: "(1) predominant

11  common questions of law or fact; (2) class representatives with claims or defenses typical of the

12  class; and (3) class representatives who can adequately represent the class." *Richmond v. Dart*

13  *Industries, Inc.* (1981) 29 Cal.3d 462, 470.

14       As soon as practical after commencement of a lawsuit that purports to be a class action, a

15  hearing typically is held on whether it will be allowed to proceed as such. *Carabini v. Superior*

16  *Court* (1994) 26 Cal.App.4th 239, 242. *Also see, In re BCBG Overtime Cases* (2008) 163

17  Cal.App.4th 1293, 1299. Class certification is generally not decided at the pleading stage of a

18  lawsuit. However, if the defects in the class action allegations appear on the face of the

19  complaint or by matters subject to judicial notice, the putative class action may be defeated by a

20  demurrer or motion to strike. *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154. *Also*

21  *see, Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234

22  (demurrer to class allegations may be sustained without leave to amend only where it is clear that

23  there is no reasonable possibility that the plaintiffs could establish a community of interest

24  among the potential class members and that individual issues predominate over common

25  questions of law and fact).

26       Class action complaints may also be subject to additional requirements under local rules,

27  as in this district, where the complaint must bear the legend "Class Action" below the case

28  number. SD CA Rule 23.1(a). In addition, the complaint must contain a separate section entitled

11

1    "Class Action Allegations" setting forth facts establishing the Rule 23(a) prerequisites and one or

2    more of the Rule 23(b) grounds for a class action, and describing the class or classes on behalf of

3    which the action is sought to be maintained. SD CA Rule 23.1(b). California Rules of Court

4    ("CRC") similarly prescribe the form of the class action complaint under state law. Specifically,

5    CRC Rule 3.761(a) states that "[a] complaint for or against a class party must include in the

6    caption the designation 'CLASS ACTION[,' which] must be in capital letters on the first page of

7    the complaint, immediately below the case number but above the description of the nature of the

8    complaint." CRC Rule 3.761(b) further provides that "[t]he complaint in a class action must

9    contain a separate heading entitled 'CLASS ACTION ALLEGATIONS,' under which the

10   plaintiff describes how the requirements for class certification are met."

11       A class action complaint also must contain allegations showing the existence of the

12   requirements for maintaining a class action. The absence of allegations establishing an

13   ascertainable class and community of interest subjects the complaint to general demurrer for

14   failure to state a cause of action. *See, e.g., Silva v. Block* (1996) 49 Cal.App.4th 345, 349.

15   Moreover, before a hearing may be held on the propriety of a class action, the complaint must

16   contain sufficient allegations of class interest or the pleading is vulnerable to a general demurrer.

17   *Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1435; *Bartlett v. Hawaiian*

18   *Village, Inc.* (1978) 87 Cal.App.3d 435, 437-438.

19       Reviewing the Plaintiff's complaint, there is a complete lack of compliance with CRC

20   Rule 3.761(a) and (b), as well as of local rules of this district. This defect is amplified by the

21   absence of allegations that plainly describe the necessary elements of community of interest and

22   in particular: (1) predominant common questions of law or fact; (2) class representatives with

23   claims or defenses typical of the class. Indeed, although Plaintiff alleges that he and the

24   unidentified members of the class have claims and causes of action in common [Complaint, ¶1],

25   the balance of his complaint belies such allegations.

26       For example, although Plaintiff is a self-described small business engaged in educational

27   and recreational scuba and kayak tours, there are no particular allegations of other similar

28   businesses or class members. Rather, Plaintiff includes other businesses such as surf camps

12

1  [Complaint, ¶¶16, 23], kayak fishermen and "all other persons or businesses which use or

2  requires access to navigable waters" [Complaint, ¶23], as well as private boats [Complaint, ¶13].

3  Taking the complaint as a whole, the class Plaintiff purportedly represents is not ascertainable.

4        Clearly, the City is not on notice regarding who or what businesses Plaintiff views to

5  have predominant common questions of law or fact, or that his claims are typical of the class.

6  This becomes more apparent when considering that Plaintiff initiated this action in his individual

7  capacity and the business in which his website describes, not of himself, but of the corporate

8  entity that originally made a claim with the City; namely, Scuba San Diego, Inc.  In other words,

9  Scuba San Diego, Inc., does not operate a surf camp and does not engage in kayak fishing per its

10 website, located at http://www.scubasandiego.com.  RFJN, **Exhibit A**.

11     Even if Plaintiff's complaint were limited to kayak-related businesses, the RFP process

12 would cause the potential or likely class members to be competitors of each other, and (since the

13 alleged facts do not disclose the common interests each may have) likely individual instead of

14 community interests may predominate.  Thus, it is not clear whether the requisite community of

15 interest has been pled.  Accordingly, Plaintiff's complaint is not only procedurally defective in

16 form, it is uncertain with respect to meeting substantive requirements to proceed as a putative

17 class action.

18       Thus, Plaintiff's complaint should be dismissed for failure to comply with procedural and

19 substantive requirements for class actions applicable under both state or federal law.

20 **E.**    **Plaintiff Lacks Standing Or Otherwise Is Incompetent to Represent the Class**

21       Plaintiff further lacks standing in this action.  If plaintiff's lack of standing to sue appears

22 on the face of the complaint or from matters judicially noticeable, a motion to dismiss may be

23 granted on this ground.  The plaintiff class bears the burden of showing that the Article III

24 standing requirements are met.  *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir.2001).  *Also*

25 *see, Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Standing must be

26 shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil

27 penalties.  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. Inc.*, 528 U.S. 167, 185 (2000).

28 Article III requires, at a minimum, that a plaintiff show he has personally suffered some actual or

13

1    threatened injury as a result of the putatively illegal conduct of the defendant. *Lynch v. Dawson*,

2    820 F.2d 1014, 1016 (9th Cir. 1987); *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir.1985).

3    *Cf., County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1009 (general demurrer). The

4    qualifications of the named plaintiff's counsel are also a factor in determining whether the

5    plaintiff is an adequate class representative. *Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*

6    (1997) 52 Cal.App.4th 1, 12.[5]

7            In this case, Plaintiff alleges that he is an individual citizen. Complaint, ¶1. The Court

8    can also note that Plaintiff is proceeding in *pro per*. Assuming *arguendo* that the procedural and

9    substantive defects to the putative class action could be determined in Plaintiff's favor, it is

10    obvious that he is attempting to be both class representative and class counsel. His *pro per* status

11    does not give him standing to assert claims on behalf of others. Furthermore, such status does

12    not permit him to engage in the unauthorized practice of law on behalf of any otherwise properly

13    pleaded class. *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697-698 (9th Cir. 1987); *Russell v.*

14    *United States*, 308 F.2d 78, 79 (9th Cir.1962); *Eagle Financial Service v. C.I.P. Venture Group,*

15    *LLC*, 2007 WL 1430060, 1 (S.D. Cal. 2007). Although a non-attorney may appear in *propria*

16    *persona* in his own behalf, that privilege is personal to him. *McShane v. United States*, 366 F.2d

17    286, 288 (9th Cir.1966). He has no authority to appear as an attorney for others than himself.

18    *Russell v. United States*, 308 F.2d 78, 79 (9th Cir.1962).

19            Under California, it is also well settled that a nonlawyer may not represent the interests of

20    others. *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 969. In addition, an attorney

21    generally may not serve as both class representative and counsel for the class. *Matassarin v.*

22    *Lynch*, 174 F3d 549, 559 (5th Cir. 1999); *Susman v. Lincoln American Corp.*, 561 F2d 86, 90–92

23    (7th Cir. 1977); *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 774; *Apple*

24

25        [5]    Plaintiff alleges or references a RICO violation without providing any facts to support such
        allegations. Although the case law is unclear as to whether a challenge to a plaintiff's standing under
26    RICO is jurisdictional, the Ninth Circuit has held the question of statutory standing is to be resolved
        under Rule 12(b)(6), once Article III standing has been established. *See, e.g., Canyon County v. Syngenta*
27    *Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th
        Cir.2004). Thus, unless Article III jurisdiction is at issue, this Court also review the question of whether
28    the County satisfies civil RICO's standing requirements under the standard for Rule 12(b)(6). *Id.*

14

1 *Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1272. The concern is that there

2 would be an irreconcilable conflict of interest because the attorney might stand to gain much

3 more in fees than any class member's individual recovery. *Id.*

4       Plaintiff does not allege that he is an attorney. The Court may also take judicial notice

5 that the State Bar of California has no record of "Rodney Watkins." *See*, RFJN, **Exhibit C**. His

6 in *pro per* status thus precludes Plaintiff from representing the other class members. *Cevallos v.*

7 *City of Los Angeles*, 914 F.Supp. 379, 385 (CD CA 1996) (shopkeeper acting in *pro se* could not

8 bring a class action suit against city as it is well established that a layperson ordinarily cannot

9 represent the interests of a class of other plaintiffs).

10       In addition, because Plaintiff's complaint lacks specificity or certainty regarding other

11 class members, it is conceivable that like Plaintiff, one or more of the businesses could be a

12 corporation. It is well settled that a corporation may appear in a court of record only through

13 counsel. *CLD Const., Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146; *Gamet v.*

14 *Blanchard* (2001) 91 CA4th 1276, 1284 n.5; *Merco Constr. Engineers, Inc. v. Municipal Court*

15 (1978) 21 Cal.3d 724, 729-732 (upholding rule that corporation cannot represent itself in court in

16 *propria persona* or through an officer or agent who is not an attorney).

17       At a minimum, Plaintiff lacks standing to function as a class representative and as class

18 counsel. Accordingly, the Court should grant Defendants' motion to dismiss on such grounds.

19 F.     **Defendants Are Immune from Federal Claims Asserted By Plaintiff**

20       Plaintiff alleges that Defendants have committed "RICO" violations and their actions are

21 redressable as civil rights violations pursuant to 42 U.S.C. §1983. To state a RICO claim, one

22 must allege a "pattern" of racketeering activity, which requires at least two predicate acts. 18

23 U.S.C. §§ 1961(5), 1962(c); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008);

24 *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.2004). Moreover, to determine whether a plaintiff

25 has sufficiently alleged that he has been "injured in his business or property," the Court must

26 examine carefully the nature of the asserted harm. *Canyon County v. Syngenta Seeds, Inc.*, 519

27 F.3d 969, 975 (9th Cir. 2008). The Ninth Circuit requires that a plaintiff asserting injury to

28 property allege "concrete financial loss." *Id.* Also see, *Oscar v. Univ. Students Coop. Ass'n*, 965

DEFENDANTS' MEMO OF POINTS & AUTHORITIES          Case No. 08cv-1615-W-BLM
RE MOTION TO DISMISS

1 | F.2d 783, 785 (9th Cir.1992) (en banc). Financial loss alone, however, is insufficient. *Syngenta*

2 | *Seeds*, *supra*, 519 F.3d at 975. Without a harm to a specific business or property interest-a

3 | categorical inquiry typically determined by reference to state law-there is no injury to business or

4 | property within the meaning of RICO. *Id.* (*quoting*, *Diaz v. Gates*, 420 F.3d 897, 900 (9th

5 | Cir.2005) (en banc), *cert. denied*, 546 U.S. 1131 (2006).

6 | Plaintiff's complaint does not describe any facts that remotely satisfies such standards.

7 | However, at least with respect to the setting of regulatory permit fees and the proposed kayak

8 | RFP program, the Defendants, if they have acted at all, it was in a legislative capacity.

9 | Legislators have an absolute common-law immunity against civil suit for their legislative acts.

10 | *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404-05, 99 S.Ct.

11 | 1171, 1178-79 (1979); *Chappell v. Robbins*, 73 F.3d 918, 920 -921 (9th Cir. 1996); *Trevino v.*

12 | *Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994), *cert. denied sub nom.* This immunity extends to

13 | those actions falling within "the sphere of legitimate legislative activity." *Tenney v. Brandhove*,

14 | 341 U.S. 367, 376, (1951).

15 | In this circuit, Courts must determine whether a particular action is legislative by

16 | considering two primary factors. First, does the act involve *ad hoc* decision-making, or the

17 | formulation of policy? *Trevino*, *supra*, 23 F.3d at 1482; *Cinevision Corp. v. City of Burbank*,

18 | 745 F.2d 560, 580 (9th Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985). Second, does the act

19 | apply to a few individuals, or the public at large? *Trevino*, *supra*, 23 F.3d at 1482; *Bateson v.*

20 | *Geisse*, 857 F.2d 1300, 1304 (9th Cir. 1988).

21 | The actions alleged to have been or are yet to be taken by the City involves policymaking

22 | and applies to the entire community. As such, the same more likely it is to be classified

23 | legislative. Thus, Defendants are immune from any federal claim related to the permit fee

24 | structure for coastal activities or, even if already implemented, the RFP program applied to

25 | kayak related businesses that Plaintiff has asserted against them.

26 | / / /

27 | / / /

28 | / / /

16

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to dismiss Plaintiff's complaint should be granted.

Respectfully submitted,

Dated: September 8, 2008            MICHAEL J. AGUIRRE, City Attorney

By:    s/ Robert J. Walters
            Robert J. Walters
            Deputy City Attorney
            Email: Rwalters@sandiego.gov

Attorneys for Defendants JERRY SANDERS and SCOTT PETERS

1  MICHAEL J. AGUIRRE, City Attorney
2  ROBERT J. WALTERS, Deputy (CSBN 140741)
       Office of the City Attorney
3      1200 Third Avenue, Suite 1100
       San Diego, California 92101-4100
4      Telephone:  (619) 533-5800
       Facsimile:   (619) 533-5856
5
6  Attorneys for Defendants JERRY SANDERS and
   SCOTT PETERS
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 RODNEY M. WATKINS, on behalf of      ) Case No.  08cv-1615-W-BLM
   himself and                          )
11                                       )        San Diego Superior Court Case No.
12              Plaintiffs,              )        37-2008-00088865-CU-BT-CTL
                                         )
13                                       ) **DECLARATION OF ROBERT WALTERS IN**
        v.                               ) **SUPPORT OF MOTION TO DISMISS**
14                                       ) **PLAINTIFFS' CLASS ACTION COMPLAINT**
                                         )
15 JERRY SANDERS, in his capacity as     ) **[Fed. R. Civ. P. Rules 12(b)(1), (6)]**
   Strong Mayor of the City of San Diego;)
16 SCOTT PETERS, City of San Diego,      ) **Judge:**    Hon. Thomas J. Whelan
17 District 1 Council member; and DOES 1 to ) **Dept.:**   Courtroom 7
   200, inclusive,                       ) **Date:**     October 13, 2008
18                                       ) **Time:**     N/A
                Defendants.              )
19                                       )        **NO ORAL ARGUMENT**
20                                       )      **per Civil Local Rule 7.1 (d.1)**
                                         )
21 _____)

22        I, Robert J. Walters, declare:

23        1.       I am employed as a deputy city attorney for the City of San Diego, and am the

24 attorney assigned to represent the Defendant CITY OF SAN DIEGO in the above-entitled

25 lawsuit.  I am licensed to practice in the State of California.  This declaration is based upon my

26 personal knowledge, and if called as a witness, with respect to the matters contained herein,

27 could and would competently testify thereto.

28 / / /

                                    1
DECLARATION OF ROBERT WALTERS RE MOTION TO DISMISS       **Case No. 08cv-1615-W-BLM**

1       2.      In support of the instant demurrer to the Complaint of Plaintiff RODNEY M.

2 WATKINS ("Plaintiff"), against the Defendants related to the City therein, I lodged the

3 following exhibits:

4       a.      A true and correct copy of printed pages from the website of Scuba San

5 Diego, Inc., located at http://www.scubasandiego.com, attached to the Request for Judicial

6 Notice in Support of Demurrer of Defendants Jerry Sanders and Scott Peters to Plaintiffs' Class

7 Action Complaint ("RFJN"), as **Exhibit A**.

8       b.      A true and correct copy of the Claim Against the City of San Diego of

9 Scuba San Diego, Inc. dated April 3, 2008, attached as RFJN, **Exhibit B**.

10       c.      A true and correct copy of a printed page from the website of the State Bar

11 of California, attached as RFJN, **Exhibit C,** showing that it has no record of "Rodney Watkins."

12       d.      A true and correct copy of a printout from California Secretary of State

13 website related to Scuba San Diego, Inc., as an active registered corporation, attached as RFJN,

14 **Exhibit D**.

15       e.      A true and correct copy of a letter from the Risk Management Department

16 of the City of San Diego dated April 15, 2008, regarding claim of Scuba San Diego, Inc.,

17 attached as RFJN, **Exhibit E**.

18       f.      A true and correct copy of various resolutions of the City Council of the

19 City of San Diego renewing contracts with various surf camps per the applicable RFP, attached

20 as RFJN, **Exhibit F**.

21       I declare under penalty of perjury of the laws of California that the foregoing is true and

22 correct and that this declaration was executed on September8, 2008, at San Diego, California.

23

24                      s/ Robert J. Walters
                       ROBERT J. WALTERS

25

26

27

28

DECLARATION OF ROBERT WALTERS RE MOTION TO DISMISS       **Case No. 08cv-1615-W-BLM**

MICHAEL J. AGUIRRE, City Attorney
ROBERT J. WALTERS, Deputy (CSBN 140741)
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendants JERRY SANDERS and
SCOTT PETERS

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY M. WATKINS, on behalf of himself and<br><br>        Plaintiffs,<br><br>v.<br><br>JERRY SANDERS, in his capacity as Strong Mayor of the City of San Diego; SCOTT PETERS, City of San Diego, District 1 Council member; and DOES 1 to 200, inclusive,<br><br>        Defendants. | ) Case No. 08cv-1615-W-BLM<br>)<br>)   San Diego Superior Court Case No.<br>)    37-2008-00088865-CU-BT-CTL<br>)<br>) **DEFENDANT'S REQUEST FOR JUDICIAL**<br>) **NOTICE IN SUPPORT OF MOTION TO**<br>) **DISMISS PLAINTIFFS' CLASS ACTION**<br>) **COMPLAINT**<br>)<br>) **[Fed. R. Civ. P. Rules 12(b)(1), (6)]**<br>)<br>) **Judge:**   Thomas J. Whelan<br>) **Dept.:**   Courtroom 7<br>) **Date:**   October 13, 2008<br>) **Time:**   N/A<br>)<br>)     **NO ORAL ARGUMENT**<br>)   **per Civil Local Rule 7.1 (d.1)**<br>) |

## I. <u>INTRODUCTION</u>

Defendants in support of their joint motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1) and (6) in the above-captioned matter, hereby request pursuant to Rule 201 of the Federal Rules of Evidence ("FRE") that the Court to take judicial notice of the items more particularly described below.

/ / /

/ / /

1

## II. REQUESTS FOR JUDICIAL NOTICE

A court must take judicial notice if a party requests it and supplies the court with the requisite information. FRE 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201(b). Furthermore, this Court may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned. *See, MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (courts may take judicial notice of matters of public record outside the pleadings); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (a court may take judicial notice of its own records). Documents whose contents are alleged in a complaint and whose authenticity is not in question may be considered in a motion to dismiss. *See, Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

Defendants thus request the Court to take judicial notice of the following:

1.  A true and correct copy of printed pages from the website of Scuba San Diego, Inc., located at http://www.scubasandiego.com, attached hereto as **Exhibit A**.

2.  A true and correct copy of the Claim Against the City of San Diego of Scuba San Diego, Inc. dated April 3, 2008, attached hereto as **Exhibit B**.

3.  A true and correct copy of a Printed page from the website of the State Bar of California, attached hereto as **Exhibit C,** showing that it has no record of "Rodney Watkins."

4.  A true and correct copy of a printout from California Secretary of State website related to Scuba San Diego as an active registered corporation, attached hereto as **Exhibit D**.

5.  A true and correct copy of a letter from the Risk Management Department of the City of San Diego dated April 15, 2008, regarding claim of Scuba San Diego, Inc., attached hereto as **Exhibit E**.

6.  A true and correct copy of various resolutions renewing contracts with various surf camps per the applicable RFP, attached hereto as **Exhibit F**.

/ / /

2

1 | Dated: September 8, 2008          MICHAEL J. AGUIRRE, City Attorney

2

3 |                                    By    /S/ Robert J. Walters

4 |                                          ROBERT J. WALTERS
                                             Deputy City Attorney
5 |                                          Email: Rwalters@sandiego.gov

6 |                                    Attorneys for Defendants JERRY SANDERS and
                                       SCOTT PETERS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE RE DEFENDANTS'                    08cv-1615-W-BLM
JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# EXHIBIT A

Certification | Activities | Philosophy | Dive Shots! | Snorkel | Kayak | Reservations

## SCUBA CERTIFICATION

We offer a wide range of SCUBA certification packages. No diving certification or Scuba Diving School in San Diego offers you a more comprehensive dive certification program for recreational Scuba Diving.

### I. Group Instruction *(3 or more persons per class)*

**Basic Scuba Certification: $395 inclusive of scuba equipment; books, wetsuit, dive tables, dive log, Certification with National Association of Underwater Instructors.**

**Registration:** Students must register and pay tuition two weeks prior to the class start date, read the text and complete the workbook exercise by the first night of lecture. A group can be three to eight students. Tuition includes materials, diving equipment, and two weeks of group training in the classroom, pool, and ocean as follows:

**Materials:** Textbook, workbook, dive log book, dive tables, video cassette, and two audio cassettes, student registration and certification card from the National Association of Underwater Instructors (NAUI).

**Diving Equipment** included: Wetsuit, tanks, weights, air, regulator, and buoyancy compensator.

**Two Week Group Training includes:**

A new section starts twice each month on the first and third Monday.

**1. Six evenings, 6 p.m. to 9:30 p.m.**

Monday, Tuesday, and Thursday. Each evening involves an hour and half lecture and two hour pool session.

**2. Five Scuba dives over two weekends:**
Saturday and Sunday 7 a.m. to 10 a.m. One dive each Saturday, one dive the first Sunday, and two dives the last Sunday. All dives are conducted off the shore. Three at La Jolla Shores and two at La Jolla Cove. Missed dives can be made up for an additional $65.00 per dive.

**Student must provide:**

Mask, snorkel, fins, boots, gloves, and cold water hood ($195.00 plus tax), notebook, 10 key calculator, swimsuit, and towel.

### Physician's Fitness Evaluation

**A diving physical examination by a physician is recommended with written approval prior to participating in diving activities.**

### Student Swimming Ability

### II. Semi-Private Instruction *(2 Students per class)*

**Basic Scuba Certification: $1200**
Approximately 40 hours of Instruction on a schedule which meets your time requirements -- to be set by you and your 'buddy'.

### III. Private Instruction

**Basic Scuba Certification: $1200**
Approximately 40 hours of instruction on a private, one-on-one basis. Class times can be arranged to fit your schedule.

**CALL 1-619-260-1880 FOR FURTHER INFORMATION**

**CERTIFICATION PROGRAMS:**

- **Basic Group Certification**
- **Basic Semi-Private Certification**
- **Basic Private Certification**
- **Wreck Diving**
- **Advanced Diving**
- **Night Diving**
- **Rescue**
- **Dive Master**
- **Assistant Instructor**

**SCUBA SAN DIEGO, INC.**

Diving Instruction with a quality difference.



All diving training agencies in the United States state in their standards and procedures that a candidate for Basic Scuba Certification must demonstrate the ability to swim.

The student swimming evaluation consists of:

1. 50-ft lateral swim underwater, one breath only
2. 220-yard swim in less than twelve minutes
3. 50-yard wrist tow of another swimmer without swim aides.
4. 10-minute watertread
5. Retrieval a five pound object from twelve feet of depth.

**Certification is not guaranteed. Students must
successfully complete the pool, ocean, and lecture work
with an overall score of 75% or higher.**

**NOTE:** We will not provide any form of accelerated or 'cram course' certification. It is our philosophy that an educated diver is safer and more likely to keep diving throughout his or her life. Many of our basic SCUBA divers have gone on to become great dive leaders. A good education requires a time commitment.

Call us at:          e-mail:
1-619-260-1880   Scubasd@aol.com

 

**Certification** | **Activities** | **Philosophy** | **Dive Shots!** | **Snorkel** | **Kayak** | **Reservations**

Scuba San Diego has a variety of activities. Scuba instruction, world class guided diving tours and snorkeling tours off La Jolla Cove, boat dives to Wreck Alley's HMCS Yukon, and kayak tours.

Contact us for additional information or e-mail Scubasd@aol.com (619) 260-1880

**Beginning Scuba Instruction: For non-divers**
**Pool Only: $55.00**

This exciting activity introduces you to scuba diving. There is a fifteen minute lecture followed by 45 minutes in the pool. You will learn five basic SCUBA skills in the shallow end of the pool. After demonstrating these skills to your scuba instructor in the shallow end of the pool, you are off to the deep end (12 ft.) for the thrill of your life. Includes all gear. You Will receive a certificate noting the length of time and at what depth you were at.

**Scuba Adventure: ( Pool & Ocean Dive ) For non-Divers: $155.00**

This is a perfect adventure for visitors and San Diego locals alike. You should be physically fit for this outstanding activity. Spend just over an hour and a half in the pool in full open ocean SCUBA gear. You will learn eight basic SCUBA skills. Then relax for the evening digesting what you have learned. At 6:00 a.m. the next morning you leave with your instructor for an actual open ocean scuba dive off the beach at the world famous La Jolla Cove Ecological Reserve. See the underwater wonder of the La Jolla Cove kelp forest and the multitude of San Diego sea life found there. Includes Instructor and all gear.

**Guided Snorkel Adventure: $70.00**

Snorkel along with your certified guide and the harbor seals at La Jolla Cove. Snorkel adventures begin at 10:00 a.m. and you finish at 1:30 p.m. This fun-filled and exciting activity gets you in the swim with the near-shore sealife at the La Jolla Cove Ecological Reserve. Your sack lunch, snorkeling gear, and wetsuit are included. Children less than 100 lbs., must provide their own full body wetsuit.


10 year old on her first Scuba Experience

**Guided Scuba Excursion to La Jolla Cove**
**certified divers: $75.00**

Certified divers, you will be guided on a tour of the world famous La Jolla Cove kelp forest by our expert guide. The maximum depth is 45 feet. Or, dive at the equally famous La Jolla Canyon, a 60 to 80 ft. dive. These dives begin at 6:00 a.m. and finish by 9:00 a.m. each morning. These exciting shore dives are a must for the serious world-class scuba diver. Dive includes weight belt, weights, and one cylinder. Close encounters with the rare and endangered Giant Black Sea Bass are had on almost every dive.

**Guided Night Dives: $95.00**

**La Jolla Canyon**

There are a multitude of interesting critters in the "Canyon" at night. This guided dive meets one half hour after sunset. There is nothing like squid runs in the winter or the California bat rays that frequent this canyon year round.

**San Diego Boat Dives (unguided)**

Our dive boats in San Diego charter out daily to Wreck Alley. The HMCS Yukon and the Ruby E. are the principle attractions. The wrecks found in San Diego's famous Wreck Alley present all the mystery of wrecks and challenges of deeper dives.

The HMCS Yukon is a 399-ft. long destroyer resting in 100 ft/30 meters. It sank in darkness during heavy swells before the professionals could sink it as an artificial reef.

The Ruby E. is an older wreck very near the Yukon. Once a US Coast Guard ship, it is well developed in sea life and is resting in 80 ft/25 meters of water.

A boat charter out to the Los Coronado Islands which are owned by Mexico, has been a favorite diving destination in San Diego for both basic and advanced divers for years.

**Wreck Alley Dives: $95.00 (two tanks)**
**Los Coronado Islands Dives: $115.00 (two tanks)**

**Rentals**

- Complete SCUBA setup with wetsuit: $55.00
- Regulator: $15.00
- Buoyancy Compensator: $15.00
- Boat Dives Rent Equipment at Boat

Download Liability Release Forms and Directions to La Jolla Cove

Call us at:        e-mail:
1-619-260-1880   Scubasd@aol.com





| Certification | Activities | Philosophy | Dive Shots! | Snorkel | Kayak | Reservations |

## PHILOSOPHY

Scuba San Diego, Inc. guides have over thirty-two years of diving experience throughout the State of California. We provide guided day and night dives to the La Jolla Cove Ecological Reserve, the oldest marine reserve in California.

The goal is to introduce divers from all over the world to the wonders of the La Jolla Cove near shore ecosystem and beautiful kelp forests. It is said that you can watch the kelp grow on good days. It actually can grow one foot per day under normal conditions. Our dive masters and instructors have hundreds of hours in this reserve.

World-class divers place diving with us in La Jolla in the top five dives that they have experienced. The amazing thing is we do this from the beach. Since 1929, no motorized craft have been permitted in the La Jolla Cove Ecological Reserve. It is that special.

## PRESIDENT'S MESSAGE

In the past 38 years of diving experience and 35 years of teaching diving, I have been lucky enough to dive all over the world. People often ask me where my favorite place in the world is to dive. I always say, "La Jolla Cove."

The question is always, "Don't you get bored diving the same area so often?"    The answer is "never."

The kelp forest is a mystical place and never boring because you never know what you will see on a given dive. We have four distinctly different seasons in our underwater world, and the temperature can range from 56 in the winter to 79 during an El Nino summer. Surprise and wonder are always the order of the day.



Come dive with us!

Sincerely.

*Rod Watkins*, President
Scuba San Diego, Inc.

Click here to view a recent testimonial & dive adventure photos from one of our enthusiastic students!

Call us at:          e-mail:
1-619-260-1880   Scubasd@aol.com





| Certification | Activities | Philosophy | Dive Shots! | Snorkel | Kayak | Reservations |
|---|---|---|---|---|---|---|

SAN DIEGO SNORKEL ADVENTURE: Your San Diego snorkel adventure to the world famous La Jolla Cove Underwater Park begins at 10:00 am when you arrive at the cove. Don your wetsuit and snorkeling gear, and begin your lesson on using the gear provided. Then snorkel La Jolla Cove underwater reserve with your guide exploring this world-class reserve's caves, cliffs and near-shore ecosystem.

Protected since 1929, the La Jolla Cove Ecological Reserve is teeming with the most beautiful temperate water fish on the west coast. Sea lions and harbor seals frequent the reserve. A close-up encounter with these beautiful sea mammals is not unlikely and always a high point of any snorkel adventure.

Snorkeling La Jolla Cove coastline is a fabulous adventure. Whether you are a first time visitor here and want to snorkel San Diego or a long time local, snorkeling La Jolla cove is always a wonderful experience.

After your guided hour and half snorkel tour, relax with your guide and a sack lunch and soft drink provided as part of your adventure. Then have a quick fresh water rinse and dry off on the beautiful bluff overlooking La Jolla Cove.

We snorkel every day, and on some weekdays it could be just you and your family. It is easy to get in and out of the water, and everything you need is included for $70.00. Children must be good swimmers and weigh at least 100 lbs. Children less than 100 lbs. must provide their own full body wetsuit.

**Contact us for additional information or e-mail** Scubasd@aol.com **(619) 260-1880**

**Make your reservations at least one day in advance except in August (2 days in advance), just dial 800 586-3483!**



Snorkel along La Jolla Famous Cliffs



Frolicking sea lion



Giant Kelp and Garibaldi



Sheep Crab foraging in Kelp Forrest

Call us at:
1-619-260-1880

e-mail:
Scubasd@aol.com







| Certification | Activities | Philosophy | Dive Shots! | Snorkel | Kayak | Reservations |
|---|---|---|---|---|---|---|

**San Diego Kayaking**

Come and enjoy the sheer excitement of kayaking the San Diego coastline on one of our guided tours. Imagine gliding atop the kelp forest protected from open waters looking towards shore and capturing the serene beauty that is characteristic of the California coastline.

LA JOLLA COVE KAYAK ADVENTURE Your sea kayak adventure to the world famous La Jolla Cove Underwater Park begins at 8:00 a.m. or 11:00 a.m. daily. Don your life-vest, then off you go with our guide touring the shear 200-foot cliffs at the south end of the park, paddling through the sea caves and then out into the kelp forest.

Sea kayaking is one of America's fastest growing water sports and one of the most rewarding. Our San Diego kayak tours can be enjoyed by almost everyone. You should be in reasonably fit condition to enjoy this outstanding adventure. It is an experience of a lifetime. It is easy to get in and out of the water and everything is included. **[No experience necessary]**

Protected since 1929, the La Jolla Cove Ecological Reserve is one of the most scenic kayak locations on the west coast. Sea Lions and Harbor Seals frequent the reserve. A close up encounter with these beautiful mammals is not unlikely and is always a high point of any Kayak Adventure.

Kayaking the San Diego coastline offers a very unique opportunity for many to see La Jolla from a surfer's point of view, close to the water and near shore. You will never forget the La Jolla cliffs, caves, and kelp forest.

**SCUBA SAN DIEGO, INC.**

http://www.sandiegokayakadventure.com/

**Guided 2.5-hour tour of La Jolla Cove Ecological Reserve**

**(Includes Sack Lunch): $70.00**


La Jolla Sea Cliffs


200 feet to sea caves


Whale encounter with touring kayakers on the La Jolla Cove Ecological Reserve

**Advance Reservations Required.  Call (619) 260-1880  8 a.m. - 5 p.m. daily.**

Call us at:
1-619-260-1880

e-mail:
Scubasd@aol.com





# EXHIBIT B



**CLAIM AGAINST THE CITY OF SAN DIEGO**
(FOR DAMAGES TO PERSONS OR PERSONAL PROPERTY)

2008 APR -3 PM 2: 34

R.M.S.D.

Received by - via

TIME STAMP

U.S. Mail        ☐
Inter-Office Mail ☐
Over the Counter ☒

File No._____

A claim must be presented to the **Risk Management Department** of the City of San Diego not later than six (6) months after the date of the incident or event. Where space is insufficient, please use additional paper and identify information by paragraph number. Completed claims must be presented to: *City of San Diego, Risk Management Dept., 1200 Third Ave., Suite 1000, San Diego, CA 92101.*

TO THE HONORABLE MAYOR AND CITY COUNCIL, The City of San Diego, California

The undersigned respectfully submits the following claim and information relative to damage to persons and/or personal property:    Scuba San Diego, Inc., Rodney M. Watkins, presiden

1. **NAME OF CLAIMANT:** _____
   a. **ADDRESS OF CLAIMANT** 5464 Mississippi Street #6 _____
   
   San Dèego, CA 92116-2855
           (CITY)              (STATE)  (ZIP)
   
   b. **PHONE NO. Home**____ (619) 341-1900 _____ c. **DATE OF BIRTH**_____
   
   Business___ (619) 260-1880 _____
   
   d. **SOCIAL SECURITY NO.** FEIN 33-0147665 ____ e. **DRIVER'S LIC. NO.**_____

2. Name, telephone and post office address to which claimant desires notices to be sent if other than above:

   _____
   
   _____

3. Occurrence or event from which the claim arises:

   a. DATE:__ July 2000 ____ b. TIME:_____ c. PLACE (exact and specific location):
           through November 2007    City Parks and Recreation Dept
   
   _____
   
   d. Specify the circumstances of the occurrence, event, act or omission which you claim caused the injury, damage or loss. (use additional paper if necessary):
   
   City violation of Civil code 670, Revenue and Taxation code 17041.5, Government Code 53978 Heckendorn, 42 Cal 3d 481 (1986, Coastal Act 30213, Coastal Act section 30222
   
   e. State how or in what manner the City of San Diego or its employees were at fault: _____
   
   Charging excessive fees for Kayak Launch permits in excess of impacts to the city.

RM-9 (Rev.4-00)    *This information is available in alternative formats upon request*

**Clear Entire Form**

4. Give a description of the injury, property damage or loss incurred so far as is known at the time of this claim. If there were no injuries, state "no injuries". (If your claim involves a vehicle, include license, year, make and model.)

   See Attached list of overpayments to City of San Diego

5. Give the name(s) of the City employee(s) causing the injury, damage or loss, if known:

   John Hudkins, Deputy Director Developed Parks

6. Name and address of any other person injured: ___All Surf Camp and Kayak permit holders___

7. Name and address of the owner of any damaged property: _____

8. Damages claimed:
   a. Amount claimed as of this date:                    $ ___7,500.00___
   b. Estimated amount of any future costs:              $100,000.00 (or accordir
   c. Total amount claimed:                              $107,500.00  to proof)
   d. Basis for computation of amounts claimed (include copies of all bills, invoices, estimates, etc.): ›

       Fees paid and future legal costs

9. Names and addresses of all witnesses, hospitals, doctors, etc.
   a.
   b.   All permitted Surf Camps and Kayak Launch permit holders
   c.
   d
10. Any additional information that might be helpful in considering claim:

    See letters to City officials attached.

**WARNING: IT IS A CRIMINAL OFFENSE TO FILE A FALSE CLAIM! (Penal Code § 72; Insurance Code § 556.1)**
I have read the matters and statements made in the above claim and I know the same to be true of my own knowledge, except as to those matters stated upon information or belief and as to such matters I believe the same to be true. I certify under penalty of perjury that the foregoing is TRUE and CORRECT.

Signed this___3___day of ___April_____ 20_08_at ___San Diego, CA_____

                                          SCUBA SAN DIEGO, INC.

                                          _____
                                          **CLAIMANTS SIGNATURE**
                                          Rodney M. Watkins, presiden

**Clear Entire Form**

# Scuba San Diego, Inc.

## Kayak Launch fees paid to 01/01/2008

| | |
|---|---|
| July 2000 | $500.00 |
| April 2001 | $500.00 |
| March 2002 | $500.00 |
| December 2003 | $500.00 |
| February 2005 | $500.00 |
| April 2006 | $500.00 |
| March 2007 | $500.00 |
| April | $500.00 |
| May | $500.00 |
| June | $500.00 |
| July | $500.00 |
| August | $500.00 |
| September | $500.00 |
| October | $500.00 |
| November | $500.00 |
| Total: | $7,500.00 |

THE CITY OF SAN DIEGO

# MANAGER'S REPORT

**DATE ISSUED:** November 23, 2005      **REPORT:** 05-229

**ATTENTION:** Land Use & Housing Committee
Agenda of November 30, 2005

**SUBJECT:** Surf Instruction Concessions / Enforcement

## SUMMARY

Issue:
Should the City Council: A) approve the mid-year amendment to the Budget Ordinance
adding .22 FTE Lifeguard I, $10,800 plus a one-time NPE expenditure of $20,102 to the
Fire-Rescue Department to start regular enforcement on May 1, 2006, and refer the
request to annualize the position to 1.34 FTE Lifeguard I, $65,645 to the FY '07 budget,
or B) refer the matter of funding to the FY '07 budget and commence regular
enforcement when funding is available.

Managers Recommendation:
Authorize the City Auditor and Comptroller to redirect $30,902 in unbudgeted FY '06
revenue from the Surf Concession Program to Fire-Rescue Department's budget to fund
Phase 1 of a Beach Commercialism Enforcement Program or defer regular enforcement
activities until this matter is addressed in the FY '07 budget.

Fiscal Impact:
General fund impact of $30,902 (.22 FTE Lifeguard I, $10,800 plus a one time NPE
expenditure of $20,102) to support the Beach Commercialism Enforcement Program May
through June 2006. This expenditure can be covered by the revenue generated by the
above budgeted revenue levels during FY '06 from the existing agreements with the nine
(9) concessionaires. To date, $95,736 has been collected with an additional $25,976
expected by the end of the current fiscal year for a total of $121,712.

## BACKGROUND

Municipal Code 63.20.20 states that it is unlawful to conduct any commercial operation on any
beach area unless licensed to do so by the City Manager. Over the past several years, the number
of unauthorized surf instruction schools and camps operating at the City's beaches and shoreline

**CALIFORNIA COASTAL COMMISSION**
SAN DIEGO AREA
7575 METROPOLITAN DRIVE, SUITE 103
SAN DIEGO, CA 92108-4421
(619) 767-2370



# Thu 13a

| | |
|---|---|
| Filed: | 4/19/06 |
| 49th Day: | 6/7/06 |
| 180th Day: | 10/16/06 |
| Staff: | Laurinda Owens-SD |
| Staff Report: | 6/22/06 |
| Hearing Date: | 7/12-14/06 |

## REGULAR CALENDAR
## STAFF REPORT AND PRELIMINARY RECOMMENDATION

Application No.: 6-05-140

Applicant:    City of San Diego             Agent: Leslie McDonald

Description:    Placement of buoy markers in the ocean to demark safe swimming area from April 1st to October 31st each year.

Site:    Immediately offshore of the La Jolla Beach & Tennis Club (2000 Spindrift Drive), between the western extensions of Paseo Dorado and Avenida de la Playa, La Jolla, San Diego, San Diego County.

## STAFF NOTES:

The proposed development is a follow-up to a claim of vested rights (6-04-06-VRC) by the City of San Diego to place buoys in the water in a portion of a designated public swim area seaward of the La Jolla Beach and Tennis Club which was approved by the Coastal Commission on January 12, 2005. Subsequently, the Sierra Club filed a lawsuit against the Commission, the City, and the La Jolla Beach and Tennis Club. A settlement agreement was reached that included several stipulations, one of which provided that the City was to apply for a coastal development permit for placement of the buoys within (30) days of the Court's signing of the stipulated order. The stipulation also permitted the City to place and/or remove the buoys pending the outcome of the coastal development permit as long as the placement of the buoys was consistent with past practice.

### Summary of Staff's Preliminary Recommendation:

Staff is recommending approval of the placement of the buoys in the water subject to special conditions. One of the primary concerns raised by the proposed development is the "perception" that the swim area demarked by the proposed buoys is private and not available to the public as the buoys are placed directly offshore a private resort. To address this issue, staff is recommending that signage, which has already been placed by the City, be retained. The retention of the signage is important as it makes it clear to the public that public beach access adjacent to the designated public swim area (and La Jolla Beach and Tennis Club) is permitted along the water's edge and that the designated public swim area surrounded by ropes and buoys is open to the public.

Specifically, the proposed placement of buoys in the ocean will consist of 1,000 feet of rope with approximately 250 floats attached to the rope, spaced at approximately four-foot intervals. In addition, two anchors weighing approximately 50 lbs. each and two concrete blocks will be attached to the rope by cables or chains to hold the buoys in place. Also, either large buoy balls or cone-shaped buoys will be placed at the corner of the demarcated swim area. The proposed buoys and anchors will be placed by divers and the use of motorized boats. In addition, the City has indicated that it will contract with private individuals or a company for the proposed work (rather than either the lifeguard service or employees of the La Jolla Beach and Tennis Club, as has been done in the past). The City will be responsible for storing the materials when not in use. In addition, although in previous years the City placed the buoys in the water between Memorial Day weekend and Labor Day, this application proposes to extend that time period and install the buoys from April 1st through October 31st of each year. The reason for this time period change is to reflect the traditionally warmer months of the year in San Diego that result in increased use of the area's beaches. As such, placing the buoys during this time frame will better ensure the public's safety to correlate with the time of year that more people will be in the water.

The area that was the subject of the vested rights claim is an area of the ocean located seaward of the La Jolla Beach and Tennis Club in the La Jolla community of the City of San Diego. The La Jolla Beach and Tennis Club is a private beachfront club/resort situated on an 18.18 acre parcel of land which retains ownership of the beach up to the Mean High Tide Line (MHTL). The areas seaward of the MHTL are tidelands held in trust for the public. The subject site is along a stretch of shoreline commonly called "La Jolla Shores". North of the site is a public beach, improved boardwalk, lifeguard station, large grassy picnic areas and several other amenities including public restrooms/showers and children's playground. The public beach extends north all the way to Black's Beach and south to a point just south of the restaurant, "the Marine Room", which is located just south of the La Jolla Beach and Tennis Club. There is a public boat launch located at the street end of Avenida de la Playa, the street that marks the northern boundary of the La Jolla Beach and Tennis Club property. Intermittent lateral public access is available along the shoreline dependent on the tide conditions, especially at the southern and northern ends where it is near tidepools, rock outcroppings and coastal bluffs.

Although the project is largely the same as that reviewed under the vested rights claim there are three major changes: 1) The buoys are now proposed to be placed at the southern edge of Vista de la Playa, the boat launch to the north of the public designated swim area; 2) the buoys will be placed in the ocean every year from March 1st though October 31st instead of Memorial Day weekend through Labor Day; and 3), the buoys will now be placed by a private company that the City will enter into a contract with rather than the Lifeguard Service or employees of the La Jolla Beach and Tennis Club.

Although the City of San Diego has a certified Local Coastal Program, the proposed development will occur in area where the Commission retains jurisdiction in perpetuity. Thus, the standard of review is Chapter 3 of the Coastal Act, with the certified LCP used as guidance.

# EXHIBIT C



# THE STATE BAR OF CALIFORNIA

Thursday, September 4, 2008                                                                State Bar Home

Home > Attorney Search

## ATTORNEY SEARCH

**Attorney Name or Bar Number**

rodney watkins          Search    Advanced Search »

Include similarly sounding names and alternate spellings

## Your search for *rodney watkins* returned no results.

Would you like to search for names that sound like *rodney watkins*?

**Contact Us**    **Site Map**    **Privacy Policy**    **Notices**    © 2008 The State Bar of California

# EXHIBIT D

# California Business Portal

Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of AUG 29, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| SCUBA SAN DIEGO | | |
| **Number:** C1361717 | **Date Filed:** 1/3/1986 | **Status:** active |
| **Jurisdiction:** California | | |
| Address | | |
| 4564 MISSISSIPPI ST #6 | | |
| SAN DIEGO, CA 92116-2855 | | |
| Agent for Service of Process | | |
| RODNEY M WATKINS | | |
| 4564 MISSISSIPPI ST #6 | | |
| SAN DIEGO, CA 92116-2855 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# EXHIBIT E



# THE CITY OF SAN DIEGO

April 15, 2008

Scuba San Diego, Inc.
c/o Rodney M. Watkins, President
5464 Mississippi Street, #6
San Diego, CA 92116

| Reference: | City File #: | LP08-0442-1924 |
|---|---|---|
| | Date of Incident: | July 1, 2000 – November 1, 2007 |
| | Claimant/Your Client: | **Scuba San Diego, Inc.** |

Dear Mr. Watkins:

The claim you presented to the Honorable Mayor and City Council of the City of San Diego on April 3, 2008, is being returned because it was not presented within the 6 (six) months after the event or occurrence as required by law. See Sections 901 and 911.2 of the Government Code. Because the claim was not presented within the time allowed by law, no action was taken on the claim.

Should you choose to pursue this matter, your only recourse at this time is **to apply** without delay to the City of San Diego **for leave to present a late claim**. See Sections 911.4 to 912.2, inclusive, and Section 946.6 of the Government Code. Under some circumstances, leave to present a late claim will be granted. See Section 911.6 of the Government Code.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Sincerely,


Leroy Hostetler
Claims Representative

Enclosure(s)

6-mo

**P.S.** "This letter only applies to causes of
action stated and implied in the claim
received over the counter on April 3, 2008,
which accrued <u>PRIOR TO</u> October 3, 2007."



**Risk Management**
1200 Third Avenue, Suite 1000 • San Diego, CA 92101-4107

# EXHIBIT F

(R-2008-1062)

RESOLUTION NUMBER R- **303751**

DATE OF FINAL PASSAGE **MAY 3 0 2008**

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH SAN DIEGO SURF
SCHOOL FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inciting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with San Diego

Surf School for the operation of Surf Camps on City Beaches, specifically at Beryl Street in

-PAGE 1 OF 2-

Pacific Beach, under the terms and conditions set forth in the agreement on file in the office of

the City Clerk as Document No. RR ___303751___.

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED: MICHAEL J. AGUIRRE, City Attorney



By _____
      Kimberly Ann Davies
      Deputy City Attorney
KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1062
MMS# 6156
I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of ___MAY 2 7 2008___.

                                 ELIZABETH S. MALAND
                                 City Clerk

                                 By _____
                                 Deputy City Clerk

Approved: __5-30-08__
         (date)
                                 _____
                                 JERRY SANDERS, Mayor


Vetoed: _____
         (date)
                                 _____
                                 JERRY SANDERS, Mayor

                                                     R 303751

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| YEAS: | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN,** |
| | **FRYE, & HUESO.** |
| NAYS: | **NONE.** |
| NOT PRESENT: | **MADAFFER.** |
| RECUSED: | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:    **GIL SANCHEZ**    , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO.    **R-303751**   , approved by the Mayor of The City of San Diego, California on    **May 30, 2008**   .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By:    _____    , Deputy

RESOLUTION NUMBER R- __303750__

DATE OF FINAL PASSAGE __MAY 30 2008__

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH SURFARI SURF
SCHOOL FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Surfari

Surf School for the operation of Surf Camps on City Beaches, specifically at Pismo Court in

Mission Beach, under the terms and conditions set forth in the agreement on file in the office of

the City Clerk as Document No. RR     303750 ..

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).

APPROVED: MICHAEL J. AGUIRRE, City Attorney

By    _____
       Kimberly Ann Davies
       Deputy City Attorney

KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1061
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of ___MAY 2 7 2008___ .

ELIZABETH S. MALAND
City Clerk

By _____
Deputy City Clerk

Approved: ___5-30-08___
                (date)

Vetoed: _____
                (date)

_____
JERRY SANDERS, Mayor

_____
JERRY SANDERS, Mayor

R 303750

-PAGE 2 OF 2-

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| YEAS: | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN,** |
| | **FRYE, & HUESO.** |
| NAYS: | **NONE.** |
| NOT PRESENT: | **MADAFFER.** |
| RECUSED: | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:  **GIL SANCHEZ** , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of
RESOLUTION NO.  **R-303750** , approved by the Mayor of The City of San Diego,
California on  **May 30, 2008** .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By: _____ , Deputy

RESOLUTION NUMBER R- __303749__

DATE OF FINAL PASSAGE __MAY 3 0 2008__

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH PASKOWTZ SURF
CAMP FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Paskowitz

Surf Camp for the operation of Surf Camps on City Beaches, specifically at Wilbur Street in

Pacific Beach, under the terms and conditions set forth in the agreement on file in the office of

the City Clerk as Document No. RR __303749__.

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED:  MICHAEL J. AGUIRRE, City Attorney



By _____
         Kimberly Ann Davies
         Deputy City Attorney

KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1060
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of __MAY 2 7 2008__.


                              ELIZABETH S. MALAND
                              City Clerk

                              By _____
                              Deputy City Clerk


Approved: __5 - 30 - 08__
              (date)                    _____
                                        JERRY SANDERS, Mayor


Vetoed: _____
              (date)                    _____
                                        JERRY SANDERS, Mayor




-PAGE 2 OF 2-

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| **YEAS:** | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN,** |
| | **FRYE, & HUESO.** |
| **NAYS:** | **NONE.** |
| **NOT PRESENT:** | **MADAFFER.** |
| **RECUSED:** | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By: __**GIL SANCHEZ**__ , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO. __**R-303749**__ , approved by the Mayor of The City of San Diego, California on __**May 30, 2008**__ .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By: _____ , Deputy

RESOLUTION NUMBER R-  303747

DATE OF FINAL PASSAGE  MAY 30 2008

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH PACIFIC SURF SCHOOL
FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Pacific

Surf School for the operation of Surf Camps on City Beaches, specifically at Ostend Court in

Mission Beach, under the terms and conditions set forth in the agreement on file in the office of

the City Clerk as Document No. RR  303747 .

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED:  MICHAEL J. AGUIRRE, City Attorney


By    _____
       Kimberly Ann Davies
       Deputy City Attorney

KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1059
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of  MAY 2 7 2008  .


                                    ELIZABETH S. MALAND
                                    City Clerk

                                    By_____
                                    Deputy City Clerk


Approved:  5-30-08                  _____
              (date)                JERRY SANDERS, Mayor


Vetoed: _____            _____
              (date)                JERRY SANDERS, Mayor

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| **YEAS:** | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN, FRYE, & HUESO.** |
| **NAYS:** | **NONE.** |
| **NOT PRESENT:** | **MADAFFER.** |
| **RECUSED:** | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:    **GIL SANCHEZ**   , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO.   **R-303747**  , approved by the Mayor of The City of San Diego, California on   **May 30, 2008**  .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By: _____, Deputy

RESOLUTION NUMBER R- **303746**

DATE OF FINAL PASSAGE **MAY 30 2008**

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN DIEGO AUTHORIZING THE MAYOR TO EXECUTE A CONCESSION AGREEMENT WITH OCEAN EXPERIENCE SURF SCHOOL FOR THE OPERATION OF SURF CAMPS ON CITY BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services, designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal (RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging $148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or designee is hereby authorized to execute a new 64-month concession agreement with Ocean Experience Surf School for the operation of Surf Camps on City Beaches, specifically the sites,

south of the Mission Beach Lifeguard Tower and Santa Monica Avenue in Pacific Beach. under

the terms and conditions set forth in the agreement on file in the office of the City Clerk as

Document No. RR **303746** .

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED:  MICHAEL J. AGUIRRE, City Attorney


By _____

Kimberly Ann Davies
Deputy City Attorney
KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1058
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of _MAY 2 7 2008_ .


ELIZABETH S. MALAND
City Clerk

By _____
Deputy City Clerk


_____
JERRY SANDERS, Mayor

Approved: _5-30-08_
(date)


Vetoed: _____
(date)

_____
JERRY SANDERS, Mayor

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| **YEAS:** | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN, FRYE, & HUESO.** |
| **NAYS:** | **NONE.** |
| **NOT PRESENT:** | **MADAFFER.** |
| **RECUSED:** | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:    **GIL SANCHEZ**   , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO.   **R-303746**  , approved by the Mayor of The City of San Diego, California on   **May 30, 2008**  .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By:                    , Deputy

RESOLUTION NUMBER R-   303748

DATE OF FINAL PASSAGE   MAY 30 2008

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH PACIFIC BEACH SURF
SCHOOL FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camp; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Pacific

Beach Surf School for the operation of Surf Camps on City Beaches, specifically the sites North

of Santa Rita Place and South of Pacific Beach Drive in Pacific Beach, under the terms and

conditions set forth in the agreement on file in the office of the City Clerk as Document

No. RR  303748 .

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).

APPROVED:  MICHAEL J. AGUIRRE, City Attorney

By      _____

Kimberly Ann Davies
Deputy City Attorney
KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1023
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of  MAY 2 7 2008  .

ELIZABETH S. MALAND
City Clerk

By  _____
Deputy City Clerk

Approved: ___C-3o-0r___
                (date)

JERRY SANDERS, Mayor

Vetoed: _____
                (date)

_____
JERRY SANDERS, Mayor

℟. 303748

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| **YEAS:** | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN,** |
| | **FRYE, & HUESO.** |
| **NAYS:** | **NONE.** |
| **NOT PRESENT:** | **MADAFFER.** |
| **RECUSED:** | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:   **GIL SANCHEZ**  , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO.   **R-303748**  , approved by the Mayor of The City of San Diego, California on   **May 30, 2008**  .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By: _____, Deputy

RESOLUTION NUMBER R-___303745___

DATE OF FINAL PASSAGE ___MAY 30 2008___

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH MENEHUNE SURF, INC.
FOR THE OPERATION OF SURF CAMPS ON CITY
BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Menehune

Surf Inc., for the operation of Surf Camps on City Beaches, specifically La Jolla Shores site 4,

and a second site, specifically the site North of the South Mission Beach Lifeguard Tower,

Mission Beach, under the terms and conditions set forth in the agreement on file in the office of

the City Clerk as Document No. RR __303745__.

      BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED:  MICHAEL J. AGUIRRE, City Attorney


By        _Cava_____
          Kimberly Ann Davies
          Deputy City Attorney

KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-1022
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of __MAY 2 7 2008__.

                                ELIZABETH S. MALAND
                                City Clerk

                                By _____
                                Deputy City Clerk

Approved: __5-30-08__
           (date)
                                JERRY SANDERS, Mayor


Vetoed: _____
           (date)
                                JERRY SANDERS, Mayor

R~ 303745

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| **YEAS:** | **PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN, FRYE, & HUESO.** |
| **NAYS:** | **NONE.** |
| **NOT PRESENT:** | **MADAFFER.** |
| **RECUSED:** | **NONE.** |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By: __**GIL SANCHEZ**__ , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO. __**R-303745**__ , approved by the Mayor of The City of San Diego, California on __**May 30, 2008**__ .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By: _____ , Deputy

(R-2008-925)

(104)

(a—h)

RESOLUTION NUMBER R-____ 303744

DATE OF FINAL PASSAGE ____ MAY 3 0 2008

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO AUTHORIZING THE MAYOR TO EXECUTE A
CONCESSION AGREEMENT WITH SURF DIVA, INC. FOR
THE OPERATION OF SURF CAMPS ON CITY BEACHES.

WHEREAS, in 2002, the community recognized there was a significant impact from surf

camp operators on public beaches; and

WHEREAS, the Park & Recreation Department together with Lifeguard Services,

designated specific shoreline sites and implemented a permit process for surf camps; and

WHEREAS, to ensure standards of training, professionalism and liability were

maintained, the City became involved with the surf camps; and

WHEREAS, in 2004, the Real Estate Assets Department issued a Request for Proposal

(RFP) inviting surf camp operators to bid on any number of sites under the terms of the RFP; and

WHEREAS, the City granted three-year agreements to eight operators located on City

beaches, including Ocean Beach, Mission Beach, Pacific Beach and La Jolla Shores; and

WHEREAS, the City has received combined rents from the surf concessions averaging

$148,000 per year; and

WHEREAS, the existing agreement expires on May 31, 2008; NOW, THEREFORE;

BE IT RESOLVED, by the Council of the City of San Diego, that the Mayor and/or

designee is hereby authorized to execute a new 64-month concession agreement with Surf Diva,

Inc., for the operation of Surf Camps on City Beaches, specifically La Jolla Shores sites 1, 2

-PAGE 1 OF 2-

and 3, under the terms and conditions set forth in the agreement on file in the office of the City

Clerk as Document No. RR  **303744** .

BE IT FURTHER RESOLVED, that the Council of the City of San Diego finds that this

activity is not a project and is therefore not subject to from the California Environmental Quality

Act [CEQA] pursuant to State CEQA Guidelines Section 15060(c)(3).


APPROVED:  MICHAEL J. AGUIRRE, City Attorney


By _____
        Kimberly Ann Davies
        Deputy City Attorney

KAD:mm
05/13/08
Aud. Cert: N/A
Or.Dept:Park & Rec
R-2008-925
MMS# 6156

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego, at this meeting of  MAY 2 7 2008 .

                                    ELIZABETH S. MALAND
                                    City Clerk

                                    By _____
                                    Deputy City Clerk



                                    _____
Approved: 5-30-08                   JERRY SANDERS, Mayor
              (date)


Vetoed: _____             _____
              (date)                JERRY SANDERS, Mayor


R 303744

Passed by the Council of The City of San Diego on May 27, 2008, by the following vote:

| | |
|---|---|
| YEAS: | PETERS, FAULCONER, ATKINS, YOUNG, MAIENSCHEIN, FRYE, & HUESO. |
| NAYS: | NONE. |
| NOT PRESENT: | MADAFFER. |
| RECUSED: | NONE. |

AUTHENTICATED BY:

**JERRY SANDERS**

Mayor of The City of San Diego, California

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(Seal)

By:    **GIL SANCHEZ**   , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and correct copy of RESOLUTION NO.   **R-303744**  , approved by the Mayor of The City of San Diego, California on   **May 30, 2008**  .

**ELIZABETH S. MALAND**

City Clerk of The City of San Diego, California

(SEAL)

By:  _____ , Deputy

1  **MICHAEL J. AGUIRRE, City Attorney**
2  **ROBERT J. WALTERS, Deputy City Attorney (SBN 140741)**
       **Office of the City Attorney**
3      **1200 Third Avenue, Suite 1100**
       **San Diego, CA  92101-4100**
4      **Telephone:  (619) 533-5800**
5      **Facsimile:   (619) 533-5856**
   **Attorneys for Defendants**
6  **Jerry Sanders and Scott Peters**

7

   **UNITED STATES DISTRICT COURT**
8
   **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
9

10  | | |
|---|---|
| **RODNEY M. WATKINS,** | ) **Case No.: 08cv1615 W (BLM)** |
| | ) |
| **Plaintiff,** | ) **(San Diego Superior Court Case No.** |
| | )   **37-2008-00088865-CU-BT-CTL)** |
|   **v.** | ) |
| | ) |
| **JERRY SANDERS, in his capacity as Strong** | ) **PROOF OF SERVICE BY MAIL** |
| **Mayor of the City of San Diego; SCOTT** | ) |
| **PETERS, City of San Diego, District 1, Council** | ) |
| **member, DOES 1-50, inclusive,** | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |

     I, the undersigned declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, California, in which county the within-mentioned mailing occurred. My business address is 1200 Third Avenue, Suite 1620, San Diego, California, 92101

     On Monday, September 08, 2008, I caused to be served the following document described as:

     **Defendants' Jerry Sanders' and Scott Peters' Notice of Motion to Dismiss Plaintiff's Class Action Complaint; Defendants' Jerry Sanders' and Scott Peters' Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Class Action Complaint; Declaration of Robert J. Walters in Support of Defendants' Jerry Sanders' and Scott Peters' Motion to Dismiss Plaintiff's Class Action Complaint; and Defendants' Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's Class Action Complaint,**

in this action by placing the true copies thereof enclosed in a sealed envelope addressed as follows:

1

PROOF OF SERVICE BY MAIL

1

2
Rodney M. Watkins
4564 Mississippi Street, #6
San Diego, CA 92116-2855
3
Tele: (619) 341-1900

4
**Plaintiff in Pro Per**

5

6
[ X ]    **(BY MAIL)**    I served the individual named by placing the documents in a sealed envelope.
I then placed it for collection and mailing with the United States Postal Service this same
7
day, at my address shown above, following ordinary business practices.

8
[   ]    **(BY FAX)**   At _____, I transmitted the above-described document by facsimile machine to
the above-listed fax numbers. The transmission originated from facsimile phone number
9
(619) 236-6018 and was reported as complete and without error.  The facsimile machine
properly issued a transmission report, a copy of which is attached hereto. [CCP
10
section 1013(e); CRC Rule 2.306].

11
[   ]    **(BY OVERNIGHT DELIVERY)**   I caused the envelope(s) to be delivered overnight via an
overnight delivery service in lieu of delivery by mail to the addressee(s). [CCP.section 1013]
12

13
[   ]    **(BY PERSONAL SERVICE)**   I served the individual named by personally
delivering the copies to the offices of the addressee.

14
Time of delivery: _____ a.m./p.m.  Person served: _____

15

16
I declare under penalty of perjury under the laws of the State of California that the foregoing

17
is true and correct.  Executed on Monday, September 08, 2008, at San Diego, California.

18

19

20
_Sue Benson_

21
Sue Benson

22

23

24

25

26

27

28

2

PROOF OF SERVICE BY MAIL

Case No.:  08CV1615 W (BLM)